IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DRE HEALTH CORPORATION,<br><br>              Plaintiff,<br>     v.<br><br>BERKLEY EQUITY LIMITED &<br>ANTHONY LYONS,<br><br>            Defendants. | |
| BERKLEY EQUITY LIMITED<br><br><br>           Counter-Plaintiff,<br>     v.<br><br>DRE HEALTH CORPORATION,<br><br>           Counter-Defendant. | Case No.: 4:22-cv-00031-RK |
| BERKLEY EQUITY LIMITED<br><br><br>           Third-Party Plaintiff,<br>     v.<br><br>AHMED "ISAAC" BAWANY,<br><br>           Third-Party Defendant. | |

**BERKLEY EQUITY LIMITED'S AND ANTHONY LYONS' SUGGESTIONS IN
SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

**COLE SCHOTZ P.C.**
James W. Walker (*Admitted Pro Hac Vice*)
901 Main Street, Suite 4120
Dallas, Texas 75202
(469) 557-9390
jwalker@coleschotz.com

Joseph Barbiere (*Admitted Pro Hac Vice*)
Eric T. Vissichelli (*Admitted Pro Hac Vice*)
25 Main Street
Court Plaza North
Hackensack, New Jersey 07601
jbarbiere@coleschotz.com
evissichelli@coleschotz.com
(201) 525-6213

and

**HUSCH BLACKWELL LLP**
Michael S. Hargens
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 283-4636
Michael.hargens@huschblackwell.com

*Counsel for Defendants Berkley Equity*
*Limited and Anthony Lyons*

DATED: June 2, 2023

# TABLE OF CONTENTS

A.      UNCONTROVERTED FACTUAL BACKGROUND ........................................... 1

     1.      DRE'S CLAIMS AGAINST BERKLEY AND LYONS AND DRE'S ALLEGED DAMAGES .................................................................. 4

         a.      The Contract Claims .................................................. 5

         b.      The Tort Claims ...................................................... 7

         c.      DRE's Alleged "Damages" ...................................... 9

B.      LEGAL ARGUMENT ....................................................................... 10

     1.      NO GENUINE ISSUE OF MATERIAL FACT EXISTS TO PRECLUDE SUMMARY JUDGMENT .................................................... 10

     2.      DRE'S TORT CLAIMS AGAINST BERKLEY AND LYONS AREBARRED UNDER THE ECONOMIC LOSS DOCTRINE ....................... 11

     3.      DRE'S FRAUD CLAIMS ARE BASED UPON ALLEGED MISREPRESENTATIONS THAT ARISE IN CONNECTION WITH THE PARTIES' CONTRACTUAL AGREEMENTS ........................................ 12

     4.      THE ECONOMIC LOSS DOCTRINE BARS TORT-BASED CLAIMS AGAINST THE CONTRACTING PARTIES' AGENTS ................................. 19

     5.      DRE'S ACCOUNT STATED CLAIM AGAINST LYONS FAILS BECAUSE NO PRIVITY OF CONTRACT EXISTS BETWEEN DRE AND LYONS ................................................................. 22

     6.      DRE'S CIVIL CONSPIRACY CLAIM IS UNSUSTAINABLE ....................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*8000 Maryland, LLC v. Huntleigh Fin. Services Inc.*,
  292 S.W.3d 439 (Mo.App. E.D.2009) ...................................................................25

*Bates & Rogers Constr. Corp. v. Greeley & Hansen*,
  486 N.E.2d 902 (Ill. 1985) .......................................................................................21

*Bershauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*,
  881 P.2d 986 (Wash. 1994) .....................................................................................21

*Blake Constr. Co., Inc. v. Alley*,
  353 S.E.2d 724 (Va. 1987) .......................................................................................21

*Breeden v. Hueser*,
  273 S.W.3d 1 (Mo. App. W.D. 2008) .....................................................................25

*BRW, Inc. v. Dufficy & Sons, Inc.*,
  99 P.3d 66 (Colo. 2004) ............................................................................................21

*Capitol Group, Inc. v. Collier*,
  365 S.W.3d 644 (Mo. App. E. Dist. 2012) ............................................................23

*Compass Bank v. Eager Road Associates, LLC*,
  922 F. Supp.2d 818 (E.D. Mo. 2013)................................................................16, 19

*Curt Ogden Equip. Co. v. Murphy Leasing Co.*,
  895 S.W.2d 604 (Mo. Ct. App. 1995).................................................................12, 16

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
  732 F.3d 902 (8th Cir. 2013) ...................................................................................11

*Dubinsky v. Mermart, LLC*,
  2009 WL 1011503 (E.D. Mo. Apr. 15, 2009), *aff'd on other grounds*, 595 F.3d
  812 (8th Cir. 2010)......................................................................................................18

*Fireman's Fund Ins. Co., v. SEC Donohue, Inc.*,
  679 N.E.2d 1197 (Ill. 1997).......................................................................................21

*Graham Const. Servs. v. Hammer & Steel Inc.*,
  755 F.3d 611 (8th Cir. 2014) ...................................................................................11

*Hardcore Concrete, LLC v. Fortner Ins. Services, Inc.*,
  220 S.W.3d 350 (Mo. App. S. Dist. 2007) ............................................................20

*Hardwood Lumber, Inc. v. Brewco Inc.*,
No. 3:18-05088-CV-RK, 2020 WL 3415871 (W.D. Mo. June 22, 2020) ..............................16

*Inspired Pharma Solutions, LLC v. 5MRX LLC*,
2018 WL 659205 (E.D. Mo. Feb. 1, 2018) ...............................................................................13

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*,
223 F.3d 873 (8th Cir. 2000) ....................................................................................................11

*Estate of Miller*,
551 S.W.3d 625 (Mo. Ct. App. 2018) .......................................................................................22

*Minella v. Electron Microscopy Scis.*,
No. CV 21-15906-ZNQ-RLS, 2022 WL 4300222 (D.N.J. Sept. 19, 2022) ...........................20

*Oak Bluff Partners, Inc. v. Meyer*,
3 S.W.3d 777 (Mo. banc 1999)..................................................................................................24

*OneBeacon Ins. Co. v. Deere & Co.*,
778 F. Supp. 2d 1005 (E.D. Mo. 2011).....................................................................................20

*Purcell Tire & Rubber Co. v. Padfield, Inc.*,
No. 4:22-CV-433 PLC, 2022 WL 2785898 (E.D. Mo. July 15, 2022).....................................12

*Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*,
929 P.2d 1228 (Wyo. 1996).......................................................................................................21

*S. Dakota Wheat Growers Ass'n v. Chief Indus., Inc.*,
337 F. Supp. 3d 891 (D.S.D. 2018) ..........................................................................................20

*Self v. Equilon Enterprises, LLC*,
Case No. 00-CV-1903(TA), 2005 WL 3763533 (E.D. Mo. Mar. 30, 2005) ....................11, 18

*Smith v. Goodyear Tire & Rubber Co.*,
856 F. Supp. 1347 (W.D. Mo. 1994) .........................................................................................19

*Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth.*,
2013 WL 4764514 (N.J. Super. L. July 25, 2013)...................................................................21

*Superior Edge, Inc. v. Monsanto Co.*,
44 F. Supp. 3d 890 (D. Minn. 2014)..........................................................................................13

*Taco John's of Huron, Inc. v. Bix Produce Co., LLC*,
No. CIV. 07-4134-KES, 2008 WL 11450655 (D.S.D. Sept. 18, 2008)..............................21, 22

*Taylor's Auto Parts v. Mayo*,
807 S.W.2d 215 (Mo. Ct. App. 1991)........................................................................................24

iii

*Trademark Med., LLC v. Birchwood Labs., Inc.*,
  22 F. Supp. 3d 998 (E.D. Mo. 2014)................................................................................12, 18

*Turnbull v. Kling*,
  No. 98 CIV. 5925 SAS, 1999 WL 672561 (S.D.N.Y. Aug. 26, 1999)....................................16

*W. Blue Print Co., LLC v. Roberts*,
  367 S.W.3d 7 (Mo. 2012) ....................................................................................................25

*Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*,
  69 F. Supp. 3d 928 (E.D. Mo. 2014)......................................................................................18

*Welsch Furnace Co. v. Vescovo*,
  805 S.W.2d 727 (Mo. Ct. App. 1991)....................................................................................23

*State ex rel. William Ranni Assocs., Inc. v. Hartenbach*,
  742 S.W.2d 134 (Mo. 1987) ................................................................................................20

*Wired Music, Inc. of the Great Midwest v. Great River Steamboat Co.*,
  554 S.W.2d 466 (Mo. App. 1977) ........................................................................................23

*Zoltek Corporation v. Structural Polymer Group, Ltd.*,
  2008 WL 4921611 (E.D.Mo. Nov. 13, 2008)........................................................................12

Berkley Equity Limited's ("Berkley") and Anthony Lyons' ("Lyons") Suggestions in Support of their Motion for Partial Summary Judgment is respectfully submitted as follows:

## A.     Uncontroverted Factual Background

1.      DRE is a corporation organized and incorporated under the laws of the State of Missouri. (Berkley's Amended Counterclaim and Third-Party Complaint ("Counterclaim")[1] ¶ 14 [ECF No. 49]; DRE Health Corporation and Ahmed "Isaac" Bawany's First Amended Answer and Affirmative Defenses ("DRE Answer")[2] ¶ 14 [ECF No. 53]).

2.      Incorporated solely by Bawany on or about October 4, 2018, who is the company's President, CEO, and sole director, DRE purports to be a medical supply business that manufactures, distributes, and/or provides Personal Protective Equipment (PPE) to various medical entities and other medical suppliers. (DRE Health Corporation's Complaint ("Complaint")[3] ¶ 9; DRE Health Corporation's Second Amended Responses to Berkley Equity Limited's and Anthony Lyons' First Set of Interrogatories and Second Request for Production of Documents ("DRE Interrogatory Responses")[4] ¶ 1; Counterclaim-Defendant Ahmed "Isaac" Bawany's Objections and Responses to Berkley Equity Limited and Anthony Lyons' First Requests For Admission ("Bawany RFA")[5] Response Nos. 1-7).

---

[1] Annexed hereto as Exhibit A.

[2] Annexed hereto as Exhibit B.

[3] Annexed hereto as Exhibit C.

[4] Annexed hereto as Exhibit D.

[5] Annexed hereto as Exhibit E.

3.      Berkley is a foreign corporation with its principal place of business in the British Virgin Islands.  (Complaint ¶ 2; Berkley Equity Limited's and Anthony Lyons' Amended Answer ("Berkley Answer") [6] ¶ 2 [ECF No. 49]).

4.      Lyons is an individual with a residence in Avon, Colorado.  (Complaint ¶ 3; Berkley Answer ¶ 3.

5.      Lyons serves as the Chairman and President of Berkley (Complaint, Ex. A, C, D, E).

6.      In August 2021, representatives of Berkley, NativeAero, DK Houck, and DRE engaged in the negotiation of a Sales and Purchase Agreement to facilitate Berkley's anticipated purchase of PPE which was to be manufactured by DRE.  (Counterclaim ¶ 22; DRE Answer ¶ 22).

7.      On September 2, 2021, Lyons, in his capacity as Chairman of Berkley, electronically signed a document provided by DRE titled "DRE Health New Customer Application."  (Complaint ¶ 4(b), Ex. A; Berkley Answer ¶ 4(b)).

8.      On September 2, 2021, DRE as "Producer" and Berkley as "Buyer," as well as NativeAero Industries as "Seller," executed a document titled "Sale & Purchase Contract Package Structure Agreement" (the "SPA") under which Berkley would purchase large quantities of "DRE Health Total Defense 200" protective masks.  (Complaint ¶ 7, Ex. C; Berkley Answer ¶ 7; Bawany RFA ¶¶ 27, 31-33).

9.      The SPA provides: "WHEREAS, the Buyer with full corporate authority and responsibility hereby confirms that it is ready, willing, and able to purchase the Products under the terms and conditions of this Agreement."  (SPA at p. 1).

---

[6] Annexed hereto as Exhibit A.

10.     On September 3, 2021, Berkley made, and DRE received, the anticipated Initial Deposit in the amount of $3 Million. (Complaint ¶ 11; Bawany RFA ¶ 39).

11.     DRE subsequently issued Invoice 279722 and Invoice 279723 (the "Invoices"). (Complaint ¶ 14; Berkley Answer ¶ 14; Complaint ¶ 33; Berkley Answer ¶ 33; Bawany RFA ¶¶ 55, 58).

12.     Both Invoices are unsigned and addressed as follows: "Attention: LEE SNIDER, PRESIDENT, NATIVEAERO" with a "CC:" to "ANTHONY LYONS, CHAIRMAN, BERKLEY EQUITY, LTD. [NASSAU, BS]."  (Complaint, Ex. E, H; Bawany RFA ¶¶ 55, 58).

13.     Invoice 279722, sometimes referred to as the "US production deal" relates to the DRE Health Total Defense 200 protective masks DRE agreed to manufacture and which Berkley agreed to purchase from NativeAero under the SPA.  (Complaint, Ex. E; Complaint ¶ 14; Bawany RFA ¶ 57).

14.     Invoice 279723, sometimes referred to as the "China Production Contract," relates to certain DRE Health Total Defense 200 protective masks originating in China that DRE had agreed to order and provide to Berkley.  (Complaint, Ex. H; Complaint ¶ 33; Bawany RFA ¶ 60).

15.     On or about October 19, 2021, DRE and Berkley executed a document titled "Addendum to Sale and Purchase Contract Package Structure Agreement" (the "Addendum"). (Complaint, Ex. D; Counterclaim ¶ 42; DRE Answer ¶ 42; Bawany RFA ¶ 80).

16.     The "Recitals" section of the Addendum provides, in part, that "the Parties entered into that certain Sale and Purchase Contract Package Structure Agreement dated September 2, 2021, as referenced by that certain e-mail agreement dated October 8, 2021 (collectively, the 'SPA') the terms of which are further modified below."

17.     Section 2(a)(i) of the Addendum provides:

3

On or before October 22, 2021 (the "Payment Date"), Producer [DRE] shall wire Buyer [Berkley], in immediately available funds, to the escrow account designated by Buyer, the amount of One Million Five Hundred Thousand and 00/100 ($1,500,000.00) Dollars (the "Payment") in consideration for the additional 10MM masks waiting to arrive in the port of Los Angeles that Producer is repurchasing from Buyer. In the event the First Payment is not made on or before the Payment Date, as liquidated damages, Producer shall pay to Buyer the amount of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars per day for every day that the Payment is not made following the Payment Date, until the Payment is received by Buyer. Any damages are contingent upon Buyer's continued full performance under the SPA.

(Complaint, Ex. D).

18. Section 3(a) of the Addendum provides: "Except as herein amended, the SPA is hereby ratified and confirmed and shall continue in full force and effect, and all of the terms, covenants and conditions contained in the SPA shall remain in full force and effect."

(Complaint, Ex. D).

### 1. DRE's Claims Against Berkley and Lyons and DRE's Alleged Damages

19. By Complaint dated January 18, 2022, DRE commenced this action against Berkley and Lyons asserting the following claims:

(i)      Count I – Actions for Account Stated against DRE and Lyons;

(ii)     Count II – Breach of Contract – Boxed Production Contract against Berkley;

(iii)    Count III – Promissory Estoppel against Berkley;

(iv)     Count IV – Specific Performance – Boxed Production Contract against Berkley;

(v)      Count V – Breach of Contract – China Production Contract against Berkley;

(vi)     Count VI – Negligent Misrepresentation against Berkley and Lyons;

(vii)    Count VII – Fraudulent Inducement against Berkley and Lyons;

(viii)   Count VIII – Fraudulent Misrepresentation against Berkley and Lyons, and

(ix)     Count IX – Civil Conspiracy against Berkley and Lyons.

(*See* Complaint, ¶¶ 65-165).

### a. The Contract Claims

20. In support of its claim for "Account Stated" against both Berkley and Lyons, DRE alleges that "DRE and Defendants had various open accounts, including open accounts related to" Invoice 279722 and Invoice 279723 and that Berkley and Lyons "have repeatedly acknowledged the propriety of the accounts stated in DRE's invoices and have likewise repeatedly stated their unconditional intention to pay the same." (Complaint ¶¶ 65-83).

21. DRE further alleges that "Defendants are therefore foreclosed from contesting the transactions reflected in the accounts stated in DRE's Invoices" and thus seeks judgement against Berkley and Lyons for the total invoiced amount of $195,000,000.00. (Complaint ¶ 83).

22. In support of its Breach of Contract claim against Berkley, DRE alleges that "Berkely entered into a contract with DRE," namely, Invoice 279722, "whereby DRE agreed to sell large quantities of equipment . . . in exchange for Berkley's promise to pay for same." (Complaint ¶ 85).

23. DRE further alleges that it "relied on the promises of Berkley that it had a stable of [*sic*] ready and willing buyers for the medical masks who desperately wanted to purchase the masks." (Complaint ¶ 90).

24. Additionally, DRE alleges that "Berkley breached its contract with DRE by failing to pay the required amounts pursuant to the parties' agreement and by failing to fulfill Berkley's obligations pursuant to the parties' agreement." (Complaint ¶ 93).

25. DRE alleges that, due to Berkley's breach, DRE sustained "and continues to sustain substantial damages." (Complaint ¶ 95).

26. In Count III alleging a claim of promissory estoppel against Berkley only, which is asserted in the alternative to DRE's breach of contract count, DRE alleges that "Berkley made

5

a promise to DRE that Berkley would pay for the millions of boxes of masks set forth in" Invoice 279722. (Complaint ¶ 95).

27. DRE alleges that it "reasonably relied on Defendants' continued reassurances that Berkley would pay for and pick up the PPE" and that "Defendants [*sic*] breached its promise by failing to pay for the products to be supplied by DRE." (Complaint ¶¶ 99-100).

28. DRE further alleges that, in reliance on Berkley's promise to pay for the masks, "in addition to monetary losses . . . , DRE also sustained additional damages to its reputation within the industry as a trusted supplier of PPE supplies." (Complaint ¶ 102).

29. In Count IV seeking specific performance against Berkley only, which is also asserted in the alternative, DRE alleges that DRE and Berkley entered into an agreement and that Berkley "breached the parties' agreement by failing to pay the required funds, refusing to pay amounts admittedly due and owing to DRE unless DRE agreed to changes to the terms of the parties' agreement, and by failing to fulfill Berkley's obligations pursuant to the parties' agreement." (Complaint ¶¶ 104-108). DRE seeks specific performance of that agreement. (Complaint ¶¶ 110-111).

30. DRE alleges that Berkley's failure to perform caused DRE to sustain damages "to its reputation in the marketplace" and in the form of "lost opportunities to provide PPE to entities with heightened needs for PPE." (Complaint ¶ 111).

31. In Count V alleging breach of contract against Berkley only, DRE alleges that, "[t]hough not called for by the SPA Agreement, DRE first raised with Berkley the notion of selling them the China Production, and made them an offer regarding same." (Complaint ¶ 113).

32. DRE alleges that "Berkley accepted the offer via text message, agreeing to purchase the China Production for $11 Million with certain amounts offset as agreed to by the

Parties" and that, in connection with such agreement, "DRE sent Berkley an Invoice no. 279723, dated September 10, 2021." *Id.* ¶ 114-15. DRE further alleges that Berkley breached Invoice 279723. (Complaint ¶ 118).

33. DRE alleges that, "[i]n reliance on Berkley's agreement to purchase the China Production," it was precluded from producing more masks to be sold to other buyers. (Complaint ¶ 117).

### b. The Tort Claims

34. In support of Counts VI through VIII alleging negligent misrepresentation, fraudulent inducement, and fraudulent misrepresentation, DRE alleges that Berkley and Lyons made various misrepresentations to DRE relating to: (i) Berkley's intention of abiding by its agreements with DRE; (ii) Berkley's intention of making payments under its agreements with DRE; and (iii) the anticipated third-party buyers secured by Berkley. (*See generally* Complaint ¶¶ 119-160).

35. For example, DRE alleges that "[d]uring the time period of September – December, 2021, the Defendants have repeatedly made statements to DRE indicating that they intended to abide by and honor both the terms of [Invoice 279722] and SPA [*sic*] and the agreement to sell the China Production." (Complaint ¶ 41).

36. By way of further example, DRE alleges that Defendants "repeatedly advised DRE's management . . . that payment would be forthcoming for both the PPE under" Invoice 279722 and Invoice 279723. (Complaint ¶ 46).

37. Additionally, DRE alleges that "Defendants at all times informed DRE that both contracts . . . remained in place and that Defendants intended to honor them, repeatedly informing DRE that payment would be sent." (Complaint ¶ 49; *see also id.* ¶¶ 50-59, 62-63).

DRE alleges payment was never sent and promises to pay were false. (Complaint ¶¶ 123, 127, 131, 138, 139, 142, 146, 156).

38.     In connection with its negligent misrepresentation and fraudulent inducement claims, DRE alleges that "Defendants made repeated representations to DRE that they intended to honor" Invoice 279722 and Invoice 279723 and "continued informing DRE that they had buyers lined up and that DRE should continue working toward meeting the production requirements each [*sic*] contract."  (Complaint ¶¶ 120, 135).

39.     DRE alleges that, in relying on Berkley's representation to uphold the parties' agreement, DRE held the China Production masks for Berkley, thereby losing the opportunity to sell those masks elsewhere.  (Complaint ¶¶ 125, 140).

40.     DRE further alleges that Defendants never informed DRE that it viewed Invoice 279722 as terminated or no longer binding, and that Defendants repeatedly represented that they intended to follow through on Invoice 279723. (Complaint ¶¶ 121, 124, 136, 139).

41.     DRE alleges that "[t]he statements, promises and representations made by Defendants . . . were a misrepresentation of the truth designed to induce Plaintiff's agreement to the Addendum and designed to buy time so Defendants could try to find buyers that they falsely claimed they already had in place." (Complaint ¶¶ 128, 143). DRE alleges that all such representations were in fact false.  (Complaint ¶¶ 123, 127, 131, 138, 142, 146).

42.     In connection with its fraudulent misrepresentation claim, DRE similarly alleges "Defendants repeatedly misrepresented to Plaintiff: a. that Defendants would be ready to buy and pick up the PPE under [Invoice 279722] on a weekly basis and that they had customers locked down.  b. that payment was imminent and would be forthcoming."  (Complaint ¶ 153).  DRE further alleges that such representations were false.  (Complaint ¶¶ 154, 156).

8

43.     DRE alleges that, as a result of these "false" representations, it undertook "the detrimental actions aforementioned" and "has sustained and incurred direct and proximate harm and damages." (Complaint ¶¶ 159-160). Finally, in connection with its civil conspiracy claim, DRE alleges that "Defendants conspired together to defraud Plaintiff." (Complaint ¶ 162). This allegedly caused DRE to sustain "substantial damages." (Complaint ¶ 165).

44.     DRE alleges that "[t]he Defendants as co-conspirators committed one or more acts in furtherance of the conspiracy, including the causing or inducing a breach of contract or business expectancy of Plaintiff, and/or to injure or destroy the trade and business of Plaintiff." (Complaint ¶ 164).[7]

### c.     DRE's Alleged "Damages"

45.     In the "Facts Common to All Counts" section of its Complaint, DRE alleges that it sustained "continued" and "substantial" damages by relying on Defendants' "contractual obligations," including "massive storage fees, equipment costs, payroll costs, consultant costs, and borrowing costs," as well as damages associated with two separate lawsuits filed by non-parties against DRE and Bawany. (Complaint ¶¶ 60, 64).

46.     Each count of the Complaint "incorporates the averments made" in the preceding paragraphs "as if the same were fully stated [therein]." (Complaint ¶¶ 65, 84, 96, 103, 112, 119, 134, 151, 161).

47.     In sum, in connection with its contractual causes of action, DRE alleges that, due to Berkley's alleged breaches, DRE sustained "substantial damages" (*see* Complaint ¶¶ 95, 109,

---

[7] On February 4, 2022, Berkley and Lyons filed Berkley Equity Limited and Anthony Lyons' Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint [ECF No. 7]. Therein, Berkley asserted counterclaims against DRE and third-party claims against Third-Party Defendant Ahmed "Isaac" Bawany, DRE's Chief Executive Officer. Berkley and Lyons filed Berkley Equity Limited's and Anthony Lyons' Amended Answer, Affirmative Defenses, Counterclaim, and Third Party Complaint [ECF No. 49]. Berkley's counterclaims and third-party claims are not at issue in the instant motion for partial summary judgment.

118), including damages to its reputation (*see id.* ¶¶ 102, 111) and lost opportunities (*see id* ¶¶ 111, 117).

48.     In connection with its fraudulent inducement and misrepresentation claims, DRE alleges that, in relying on Berkley's and Lyons' representations that Berkley would uphold the agreement, which DRE alleges was a tortious act, DRE sustained harm and damages (*see* Complaint ¶¶ 113, 133, 150, 160; *see also* ¶ 165), lost opportunities (*see id.* ¶¶ 125, 140), and costs to meet the obligations under the agreement (*see id.* ¶¶ 122, 130, 145, 155).

49.     In its initial disclosures, DRE identifies its damages as follows: "DRE asserts that its damages are set forth in its detailed Complaint, which include those resulting from breaches from the obligations of the invoices, DRE's terms and conditions, and the Purchase Order dated September 2, 2021 and Addendum, as well as attorney fees and costs of suit."  (Plaintiff DRE Health Corporation's and Counterclaim Defendant A.I. Bawany's Rule 26(a)(1) Initial Disclosures ("Initial Disclosures")[8], p. 4.)

**B.     Legal Argument**

   **1.     No genuine issue of material fact exists to preclude summary judgment**

Here, it is undisputed that DRE's claims all stem from agreements between DRE and Berkley regarding the production and sale of protective masks.  Because the damages sought by DRE are strictly economic in nature and flow solely and exclusively from DRE's and Berkley's contractual relationship, Missouri's economic loss doctrine precludes DRE from asserting fraud and misrepresentation claims against Berkley. There are, moreover, no facts alleged in the Complaint, much less any record evidence, establishing any basis for holding Lyons personally

---

[8] Annexed hereto as Exhibit F.

liable in connection with the contractual agreements.  Finally, DRE's civil conspiracy claim must be dismissed for the additional reason that it is based on the theory that Berkley and Lyons are the sole co-conspirators, which cannot, as a matter of law, form the basis of a civil conspiracy claim under Missouri law.

### 2. DRE's Tort Claims Against Berkley and Lyons Are Barred Under the Economic Loss Doctrine

DRE's claims for fraudulent misrepresentation (Count VIII), fraudulent inducement (Count VII), AND negligent misrepresentation (Count VI) (collectively, the "Fraud Claims") fail because any purported misrepresentations relate to contractual obligations and, therefore, these claims are barred under the economic loss doctrine.

Missouri's economic loss doctrine "prohibits a party 'from seeking to recover in tort for economic losses that are contractual in nature.'"  *Graham Const. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611 (8th Cir. 2014) (quoting *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010)); *see Self v. Equilon Enterprises, LLC*, Case No. 00-CV-1903(TA), 2005 WL 3763533, at *8-11 (E.D. Mo. Mar. 30, 2005) (describing economic loss doctrine as a "general rule limiting plaintiffs to contract damages for economic loss."); *see also, Dannix Painting, LLC v. Sherwin-Williams Co.,* 732 F.3d 902, 905–06 (8th Cir. 2013) (citations and quotations omitted).  The doctrine exists to protect the integrity of the bargaining process, through which the parties have allocated the costs and risks.  *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 882 (8th Cir. 2000).

Here, DRE's Fraud Claims are breach of contract claims recast as claims arising from alleged misrepresentations, which seek damages flowing exclusively from the subject contracts. As the cited facts reveal, the conduct made the subject of DRE's breach of contract causes of action

is essentially the same conduct urged as the basis for the Fraud Claims. Thus, each of the Fraud Claims is barred by the doctrine.

### 3. DRE's Fraud Claims Are Based Upon Alleged Misrepresentations That Arise in Connection with the Parties' Contractual Agreements

Courts have universally rejected tort claims that are rooted in performance of contractual obligations, particularly where, as here, the alleged fraud is not independent of the contract. *See Zoltek Corporation v. Structural Polymer Group, Ltd.*, 2008 WL 4921611, at *4 (E.D.Mo. Nov. 13, 2008) (finding the fraud claim was "not outside or collateral to the [contract] and thus [was] barred by the economic loss doctrine."). *Purcell Tire & Rubber Co. v. Padfield, Inc.*, No. 4:22-CV-433 PLC, 2022 WL 2785898, at *6 (E.D. Mo. July 15, 2022) (applying economic loss doctrine to negligent misrepresentation claim); *Curt Ogden Equip. Co. v. Murphy Leasing Co.*, 895 S.W.2d 604, 609 (Mo. Ct. App. 1995) (applying economic loss doctrine to fraudulent inducement claim). To determine whether a fraud-based claim is independent of the contract claim for the purposes of the economic loss doctrine, courts consider two key factors:

> (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract; and
>
> (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud.

*Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014) (quoting *Compass Bank v. Eager Road Associates, LLC*, 922 F. Supp.2d 818, 827 (E.D. Mo. 2013)). Here, DRE simply recasts it breach of contract claims as Fraud Claims seeking to recover damages flowing exclusively from the alleged contractual breach. As a result, it is clear the Fraud Claims are not independent of the contractual claims.

*First*, the alleged misstatements underlying DRE's Fraud Claims involve subject matter that is incorporated in and central to the parties' agreements. DRE's primary theory supporting its

Fraud Claims is predicated on allegations that Berkley and Lyons made various statements indicating that they intended to abide by and honor the terms of the various agreements DRE identified in its Complaint. (*See* SOF ¶¶ 28-34). Those allegations are self-evidently intertwined with DRE's allegations that Berkley breached the agreements at issue by not abiding by and honoring certain identified contractual terms. Indeed, courts have specifically held that where, as here, an alleged misrepresentation "pertains to a party's *intent* to perform under a contract, the misrepresentation is more properly construed as a breach of contract claim." *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014) (internal citation omitted) (emphasis added); *see also Inspired Pharma Solutions, LLC v. 5MRX LLC*, 2018 WL 659205, at *3-4 (E.D. Mo. Feb. 1, 2018) (dismissing fraudulent and negligent misrepresentation claims as barred by the economic loss doctrine where they concerned the defendants' performance or intention to perform).

DRE also alleges the Defendants repeatedly advised DRE that payment for both contracts would be forthcoming, and that Defendants falsely claimed to have buyers lined up to purchase the masks at issue at the time the agreements were reached. (*See* SOF ¶¶ 30, 32, 34). Again, such alleged misrepresentations were indisputably made in the context of the parties' contractual relationship and relate directly to the transactions contemplated pursuant to that relationship. (*See generally* SOF ¶¶ 7-17). In fact, representations to this effect regarding Berkley's ability to perform are expressly incorporated into both the SPA and the Addendum. (*See* SOF ¶ 8 ("[T]he Buyer with full corporate authority and responsibility hereby confirms that it is ready, willing, and able to purchase the Products under the terms and conditions of this Agreement." (quoting the SPA)); *id.* ¶ 17 ("Except as herein amended, the SPA is hereby ratified and confirmed and shall

continue in full force and effect, and all of the terms, covenants and conditions contained in the SPA shall remain in full force and effect." (quoting the Addendum)).

The similarity of DRE's fraud and contractual claims is further reinforced by DRE's reliance on nearly identical allegations in support of its contractual claims, as demonstrated by the following chart:

| Nature of Allegation | Fraud Claims | Contract Claims |
|---|---|---|
| *Promise to pay* | • "The representations that Defendants made regarding the [Invoice No. 279723] Production similarly were false, as payment was repeatedly promised …." Complaint ¶¶ 127, 142.<br><br>• "Defendants repeatedly misrepresented to Plaintiff...that payment was imminent and would be forthcoming." Complaint ¶ 153. | • "Defendants repeatedly stated their unconditional intention to pay DRE all accounts stated on" Invoice No 279722 (Complaint ¶ 72) and Invoice No. 279723 (Complaint ¶ 79). *See also* Complaint ¶ 81.<br><br>• "Berkley made a promise to DRE that Berkley would pay for the millions of boxes of masks set forth in [Invoice No. 279722]." Complaint ¶ 97.<br><br>• "DRE reasonably relied on Defendants' continued reassurances that Berkley would pay for and pick up the PPE." Complaint ¶ 99. |
| *Failure to pay* | • "Defendants have yet to make payments under the terms of" Invoice No 279722." Complaint ¶¶ 123, 138.<br><br>• "The representations that Defendants made regarding the [Invoice No. 279723] Production similarly were false, as payment was…never received." Complaint ¶¶ 127, 142. | • "Berkley breached the contract by failing to pay for and pick up the PPE product." Complaint ¶ 89.<br><br>• "Berkley breached its contract with DRE by failing to pay the required amounts pursuant to the parties' agreement and by failing to fulfill Berkley's obligations pursuant to the |

14

| Nature of Allegation | Fraud Claims | Contract Claims |
|---|---|---|
| | • "…Defendants did not provide the funds as promised, agreed and assured." Complaint ¶¶ 131, 146, 156.<br><br>• "Defendants repeatedly represented to DRE that they intended to follow through on [Invoice No. 279723], but no payment or even partial payment has been delivered." Complaint ¶ 139. | parties' agreement." Complaint ¶ 93.<br><br>• "Defendants breached its promise by failing to pay for the products to be supplied by DRE." Complaint ¶ 100.<br><br>• "Berkley breached the parties' agreement by failing to pay the required funds…" Complaint ¶ 108. |
| *The availability of buyers* | • "Defendants continued informing DRE that they had buyers lined up and that DRE should continue working toward meeting the production requirements...." Complaint ¶¶ 120, 135.<br><br>• "The statements, promises and representations made by Defendants…[were] designed to buy time so Defendants could try to find buyers that they falsely claimed they already had in place." Complaint ¶¶ 128, 143.<br><br>• "Defendants' intentionally made the statements…as they searched for Buyers that they claimed existed but that never materialized." Complaint ¶ 147.<br><br>• "Defendants repeatedly misrepresented to Plaintiff...they had customers locked down." Complaint ¶ 153 | • "DRE relied on the promises of Berkley that it had a stable of ready and willing buyers for the medical masks who desperately wanted to purchase the masks." Complaint ¶ 90. |

Thus, the alleged misrepresentations underlying DRE's Fraud Claims cannot, as a matter of law,

support a viable fraud claim in light of DRE's breach of contract claims incorporating "mirror

15

image" facts asserted in the same suit. *See Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013) (alleged misrepresentations regarding a party's "ability to perform obligations that become part of the parties' contract . . . are insufficient to state a claim for fraud").

The fact that DRE has styled Count VII of the Complaint as a claim for "fraudulent inducement" does not alter this analysis, as none of the alleged misrepresentations supporting that claim are independent of the parties' contractual relationship. *See Curt Ogden*, 895 S.W.2d at 609 (a fraudulent inducement claim fails as a matter of law where the claim is based on "identical allegations of fraudulent inducement and breach of contract"); *accord Turnbull v. Kling*, No. 98 CIV. 5925 SAS, 1999 WL 672561, at *5 (S.D.N.Y. Aug. 26, 1999) (fraudulent inducement claim based on representation regarding ability to make payments pursuant to agreement was "a classic example of a contract claim disguised as fraud"). Here, the facts alleged in the "fraudulent misrepresentation claim" are nearly identical to those included in the "negligent misrepresentation" claim. (SOF ¶¶ 42-45). The only additional allegations supporting DRE's fraudulent inducement count are that Berkley and Lyons allegedly misrepresented that they were prepared to pick up the masks and that payment was imminent. (SOF ¶¶ 46-47). But those alleged misrepresentations are likewise integrally related to the parties' obligations under the contracts. Therefore, based on the undisputed facts, the subject matter of the alleged misrepresentations was incorporated into the parties' contracts such that the economic loss doctrine applies.

*Second*, all the damages sought by DRE flow directly and exclusively from the alleged breaches of contract. *See Hardwood Lumber, Inc. v. Brewco Inc.*, No. 3:18-05088-CV-RK, 2020 WL 3415871, at *2 (W.D. Mo. June 22, 2020) (Ketchmark, *D.J.*) (concluding that "Plaintiff's alleged damages resulting from Defendant's purported misrepresentations are the same as its contract damages" and applying the economic loss doctrine). In connection with its Contract

Claims, DRE alleges that, due to Berkley's alleged breaches, DRE sustained "substantial damages," including damages to its reputation and lost opportunities. (*See* SOF ¶¶ 25, 28, 30, 33, 48). Similarly, in connection with its Fraud Claims, DRE alleges that it sustained harm and damages, lost opportunities, and damages in the form of costs to meet the obligations under the agreement. (*See id.* ¶¶ 39, 43, 49). This chart summarizes the similarities between the damages DRE seeks pursuant to its Fraud Claims and its breach of contract damages:

| Alleged Damages in Connection with Fraud Claims | Alleged Damages in Connection with Contract Claims |
|---|---|
| • "Relying on these representations, DRE held the millions of masks in the [Invoice No. 279723] Production for Berkley's exclusive use, turning down offers to sell the masks elsewhere and holding the masks at its facilities taking up valuable space that could have been used for different product several times over." Complaint ¶ 125.<br><br>• "Relying on these representations, DRE held the millions of masks in the [Invoice No. 279723] Production for Berkley's exclusive use, turning down offers to sell the masks elsewhere and taking up valuable space in DRE's facility." Complaint ¶ 140. | • "DRE focused on the Berkley contracts in lieu of pursuing other significant ventures in order to honor DRE's obligations under the agreement with Berkley." Complaint ¶ 91.<br><br>• Berkley's failure to perform its contractual obligations caused DRE to sustain additional damages, … as well as DRE's lost opportunities to provide PPE to entities with heightened needs for PPE…" Complaint ¶ 111.<br><br>• "In reliance on Berkley's agreement to purchase the [Invoice No. 279723] Production, DRE held that Production for Berkley at its detriment, … precluding it from manufacturing additional masks that it could have sold to other buyers. DRE also was precluded from selling those masks elsewhere at a time when the value of masks was sky high." …" Complaint ¶ 117. |

Moreover, DRE alleges generally that it sustained "continued" and "substantial" damages by relying on Defendants' "contractual obligations," including "massive storage fees, equipment costs, payroll costs, consultant costs, and borrowing costs," as well as damages associated with two separate lawsuits filed by non-parties against DRE and Bawany. (*Id.* ¶ 46). The fact that each

count "incorporates the averments made" in the preceding paragraphs "as if the same were fully stated [therein]," SOF ¶ 41, further supports the conclusion that the damages alleged in connection with the Fraud Claims are duplicative of the alleged contractual damages. *See Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928, 933-34 (E.D. Mo. 2014) (noting, in *dicta*, that the complaint "reincorporated the same damages allegations for both its breach of contract and negligent misrepresentation counts. Missouri law does not allow for a double recovery on these claims."). Indeed, DRE has even conceded as much in its Initial Disclosures, which provide that DRE's damages are limited to "those resulting from breaches from the obligations of the invoices, DRE's terms and conditions, and the Purchase Order dated September 2, 2021 and Addendum." (SOF ¶ 54.)

In conclusion, by means of its Fraud Claims, DRE is "seeking to recover in tort for losses that are contractual in nature and the only damages asserted are purely economic losses, lost profits and business and future business expectations." *Self*, 2005 WL 3763533, at *11; *see Birchwood*, 22 F. Supp. 3d at 1004 ("[T]he economic loss doctrine encompasses consequential economic loss such as loss of profits and loss of good will or business reputation."). No amount of discovery will change this undisputed fact. Because DRE requests no additional damages outside those recoverable in connection with its contractual claims, including lost profits, damages to its reputation, and lost opportunities, its Fraud Claims seek recovery of purely economic damages. Thus, DRE's Fraud Claims are not independent of its contractual claims and not actionable as a matter of law. *See Dubinsky v. Mermart, LLC*, 2009 WL 1011503, at *6-7 (E.D. Mo. Apr. 15, 2009) (dismissing fraud claims where "plaintiffs suffered no damage outside of what was due to them under the contract"), *aff'd on other grounds*, 595 F.3d 812 (8th Cir. 2010).

4.    **The Economic Loss Doctrine Bars Tort-Based Claims Against the Contracting Parties' Agents**

Not only has DRE improperly sought to expand the breadth of its claims by recasting straightforward contractual claims as claims sounding in fraud against Berkley, but, worse yet, DRE has asserted those claims against Berkley's principal, Lyons, in his individual capacity. Because the Fraud Claims against Lyons, like those asserted against Berkley, fundamentally arise from Berkley's alleged breaches of contract and nothing more, they too are barred by the economic loss doctrine.

As explained previously, the "two critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine are (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract . . . and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Compass*, 922 F. Supp. 2d at 827. Here, the alleged misrepresentations identified in connection with DRE's Fraud Claims against Berkley are identical to those underlying its Fraud Claims against Lyons. (*See* SOF ¶¶ 30-37). Thus, for the reasons set forth in detail above, the Fraud Claims made against Berkley are not independent of DRE's contractual claims, and the subject matter of Lyons' alleged misrepresentations was incorporated into the parties' contracts and no additional damages are sought with respect to those specific statements. The economic loss doctrine, therefore, applies to the same extent to the Fraud Claims asserted against Lyons.

This conclusion comports fully with Missouri law. We begin by noting that, under the well-established doctrine of *respondeat superior*, a master is liable "for the torts of his servant which are committed within the scope of employment." *Smith v. Goodyear Tire & Rubber Co.*, 856 F. Supp. 1347, 1350 (W.D. Mo. 1994) (citation and internal quotation marks omitted). It is similarly well-settled that a disclosed principal's "agent is not liable for economic loss resulting

19

from acts performed within the scope of its agency." *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. 1987).

Here, it is undisputed that Lyons, as Chairman and President, acted at all relevant times as Berkley's agent, and that the alleged misrepresentations by Lyons would have been made within the scope of his authority as Berkley's agent. (*See* SOF ¶¶ 4, 6, 7, 10 (establishing transactional documents were executed by Lyons as principal and on behalf of Berkley); *id.* ¶¶ 30-37 (demonstrating that all alleged misrepresentations related to Berkley's contractual relationship with DRE)). Accordingly, even if, as DRE has alleged, DRE "suffered economic loss from the acts of [Lyons] as an agent, [its] remedy is to sue the principal, [Berkley.]" *See Ranni*, 742 S.W.2d at 140; *see also Hardcore Concrete, LLC v. Fortner Ins. Services, Inc.,* 220 S.W.3d 350 (Mo. App. S. Dist. 2007) (holding that, in circumstances where an agent was acting solely within the scope of his authorized authority, the principal was responsible for any purported misconduct).

Furthermore, courts have rejected the notion that that the economic loss doctrine cannot apply in the absence of direct privity between the parties, and for good reason. *See OneBeacon Ins. Co. v. Deere & Co.*, 778 F. Supp. 2d 1005, 1008 (E.D. Mo. 2011) (noting the lack of authority supporting the plaintiff's argument for privity requirement); *see also Minella v. Electron Microscopy Scis.*, No. CV 21-15906-ZNQ-RLS, 2022 WL 4300222, at *5-6 (D.N.J. Sept. 19, 2022) ("Plaintiff baldly asserts that Defendant Kirsch cannot avail herself of the protection of the economic loss doctrine because she is not a party to the contract . . . . Plaintiff, however, cites to no authority to support his assertion."). In contrast to the absence of any authority supporting a privity requirement, an overwhelming majority of courts outside of Missouri have expressly held that privity is *not* required to trigger application of the economic loss doctrine. *See S. Dakota Wheat Growers Ass'n v. Chief Indus., Inc.*, 337 F. Supp. 891, 903 (D.S.D. 2018) ("Privity of

contract is not a requirement for invoking the economic loss rule . . . .") (citing *Corsica Co-op. Ass'n v. Behlen Mfg. Co., Inc.*, 967 F.Supp. 382, 387 (D.S.D. 1997))); *Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth.*, 2013 WL 4764514, at *9 (N.J. Super. L. July 25, 2013) ("Given the nature of the relationships among the parties, the absence of a direct contractual relationship does not preclude the application of the economic loss doctrine."); *Fireman's Fund Ins. Co., v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1198, 1201 (Ill. 1997) (applying economic loss doctrine to parties lacking privity of contract); *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004) ("The economic loss rule applies between and among commercial parties for [several] reasons, none of which depends upon or is limited by the existence of a two-party contract.").[9]

A rule applying the economic loss doctrine to fraud-based claims asserted against a contracting party's principal not only is consistent with Missouri authority addressing the doctrine generally, but it also makes good sense. This Court should consider *Taco John's of Huron, Inc. v. Bix Produce Co., LLC*, No. CIV. 07-4134-KES, 2008 WL 11450655, at *5 (D.S.D. Sept. 18, 2008) (internal citations omitted) as being dispositive of this issue. In *Taco John's*, the plaintiffs owned Taco John locations and sued a delivery company that delivered lettuce contaminated with E.Coli. to other Taco John locations not owned by the plaintiffs. The plaintiffs' stores did not receive contaminated lettuce, but they alleged that the negative publicity stemming from the affected stores had a significant adverse impact on their businesses.

The defendants argued, among other things, that the tort claims were barred by the economic loss doctrine because "[t]he only damages plaintiffs allege resulted from defendants'

---

[9] *See also Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1231, 1235 (Wyo. 1996); *Bershauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 988, 993 (Wash. 1994); *Blake Constr. Co., Inc. v. Alley*, 353 S.E.2d 724, 725, 727 (Va. 1987); *Bates & Rogers Constr. Corp. v. Greeley & Hansen*, 486 N.E.2d 902, 903-06 (Ill. 1985).

negligence are 'substantial damages to their businesses, including but not limited to, diminished sales, loss of profits, loss of value of their businesses, loss of goodwill, and loss of inventory." *Id.* The court agreed that those damages "fit squarely within the definition of 'economic loss.'" *Id.* The Court further rejected the plaintiffs' argument that the economic loss doctrine only pertains to UCC cases (which the parties had agreed the case was not) and therefore was not applicable to the case. *Id.*

Here, consistent with the reasoning set forth in *Taco John's*, it defies logic to conclude that Berkley, the entity in direct privity with DRE, is not liable for economic damages arising from the Fraud Claims—a conclusion the Court should unquestionably reach for the reasons discussed above—yet at the same time impose liability for those same redundant contract-based damages against Lyons, a non-contracting party. Further, as in *Taco John's*, any damages sought by DRE from Lyons "fit squarely within the definition of 'economic loss.'" *Id.* Accordingly, the undisputed facts fail to support DRE's Fraud Claims against Lyons.

In summary, DRE's Fraud Claims against Berkley and Lyons are merely contract claims cloaked in the guise of a tort, which are barred as a matter of law by the economic loss doctrine, and summary judgment dismissing the Fraud Claims is warranted.

### 5. DRE's Account Stated Claim Against Lyons Fails Because No Privity of Contract Exists Between DRE and Lyons

DRE's account stated claim against Lyons must be dismissed for the simple reason that the Invoices were not issued to Lyons in his individual capacity. To establish a claim for account stated, the claimant must prove that "(1) the parties had prior financial dealings, an open account; (2) the parties reached an agreement as to the amount due and owing on that account; and (3) the debtor acknowledged this obligation and made an unconditional promise to pay." *Estate of Miller*, 551 S.W.3d 625, 628 (Mo. Ct. App. 2018) (quoting *Scheck Indus. Corp. v. Tarlton Corp.*, 435

S.W.3d 705, 721–22 (Mo. App. E.D. 2014)).  Based on the undisputed facts, DRE cannot satisfy any of these elements of its account stated count against Lyons in connection with the Invoices.

It is well settled that issuance of an invoice to an officer of a company does not impose personal liability on the officer.  *See Welsch Furnace Co. v. Vescovo*, 805 S.W.2d 727, 728 (Mo. Ct. App. 1991) ("The fact that invoices were sent . . . does not prove that [he] purchased the merchandise and services in his individual capacity.").  The general rule regarding liability incurred by an individual who signs an instrument on behalf of another party  is found in *Wired Music, Inc. of the Great Midwest v. Great River Steamboat Co.*, 554 S.W.2d 466, 468–69 (Mo. App. 1977) (citations omitted); *see also Capitol Group, Inc. v. Collier*, 365 S.W.3d 644, 650 (Mo. App. E. Dist. 2012) ("To unequivocally manifest an intent to be bound personally, a corporate officer must sign the contract twice, once in his corporate capacity and once in his individual capacity.").

Here, each of the Invoices was indisputably issued to NativeAero and copied to Lyons *as chairman of Berkley*—not in Lyons' individual capacity.  (SOF ¶ 12).  Lyons only did business on behalf of Berkley.  (SOF ¶¶ 5, 7-8, 12, 19).  Moreover, it is undisputed that Lyons was not party to *any* agreement with DRE.  (SOF ¶¶ 12, 19).  Any reliance on the SPA and/or the Addendum, therefore, cannot salvage this claim because Lyons never executed the SPA and Addendum in his personal capacity, nor did he express any intention to bind himself individually.  Even if the SPA and/or Addendum were the agreement(s) establishing the debt, which DRE does not even allege, it is undisputed that Lyons did not provide the required additional signature to bind himself in his individual capacity.  (SOF ¶¶ 12, 19).

*Taylor's Auto Parts v. Mayo*, 807 S.W.2d 215 (Mo. Ct. App. 1991) is instructive here. In that case, the Missouri Court of Appeals reversed judgment holding an officer personally liable on an account stated claim. *Taylor's Auto*, 807 S.W.2d at 215-16 (internal citations omitted).

In this case, the undisputed facts establish Lyons was always acting on behalf of Berkley and not in his individual capacity. (SOF ¶¶ 6-8, 10, 18-19). The Invoices were not signed by Lyons: they were issued to NativeAero and Lee Snider, and "cc'd" to Berkley through its agent, Lyons.[10] (SOF ¶ 12). In addition, because Berkley is being sued directly in this litigation, there is no dispute that Bawany and DRE understood they were doing business with Berkley.[11]

It is undisputed that Lyons is not a party to the Invoices. (SOF ¶ 12). Accordingly, Lyons is not individually bound by the Invoices and summary judgment dismissing DRE's account stated claim against Lyons is appropriate.

### 6. DRE's Civil Conspiracy Claim Is Unsustainable

Finally, DRE's civil conspiracy claim is ripe for summary judgment in favor of both Berkley and Lyons for the following two reasons: (i) there is no actionable underlying act to form the basis of a conspiracy; and (ii) there can be no conspiracy between an agent and a principal.

*First*, there is no actionable underlying act to form the basis of a conspiracy. To demonstrate that a civil conspiracy existed, DRE must show: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) DRE was thereby damaged. *See Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. banc 1999). Although civil conspiracy has its own elements that must be

---

[10] In fact, the Invoices presented are not signed by anyone (SOF ¶ 12), thereby further undermining DRE's account stated count.

[11] This argument is further bolstered by DRE's decision not to pursue claims for breach of contract, promissory estoppel or specific performance (Counts II-IV) against Lyons.

proven, it is not a separate and distinct action. *Breeden v. Hueser*, 273 S.W.3d 1, 13 (Mo. App. W.D. 2008). Rather, it holds the co-conspirators "jointly and severally liable for the underlying act." *8000 Maryland, LLC v. Huntleigh Fin. Services Inc.*, 292 S.W.3d 439, 451 (Mo.App. E.D.2009). Here, for the reasons set forth at length above (*see* Section II, *supra*), DRE's tort claims must be dismissed pursuant to the economic loss doctrine. Therefore, because there is no underlying actionable tort claim, the civil conspiracy claim cannot stand alone. *See W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) ("In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well.").

*Second*, a civil conspiracy claim cannot lie where, as here, Lyons and Berkley are the sole alleged co-conspirators. As a general rule, there can be no conspiracy between an agent and a principal. *8000 Maryland*, 292 S.W.3d at 452 (citing *Mika v. Central Bank of Kansas City*, 112 S.W.3d 82, 94 (Mo. App. 2003)). That is because "[t]wo entities that are not legally distinct cannot conspire with one another." *Id.*

Here, it is undisputed that Lyons was at all relevant times an agent acting on behalf of Berkley, his principal. ((*See* SOF ¶¶ 4, 6, 7, 10 (establishing transactional documents were executed by Lyons as principal and on behalf of Berkley); *id*. ¶¶ 30-37 (demonstrating that all alleged misrepresentations related to Berkley's contractual relationship with DRE)). Accordingly, based on the undisputed facts and under well-settled Missouri law, Lyons and Berkley cannot be co-conspirators because they are not legally distinct entities. As they are the only two identified conspirators in the alleged conspiracy, DRE's civil conspiracy claim is properly dismissed.

Accordingly, the Court should grant summary judgment in favor of Berkley and Lyons and dismiss DRE's civil conspiracy claim (Count IX).

**WHEREFORE**, Berkley and Lyons request the Court enter an order granting partial summary judgment in favor of Lyons and Berkley against DRE to the extent set forth herein, and for such other and further relief, both special and general, at law and in equity, as it deems just and proper.

DATED:  June 2, 2023

Respectfully submitted,

*/s/ James W. Walker*
James W. Walker (admitted *Pro Hac Vice*)
**COLE SCHOTZ P.C.**
901 Main Street, Suite 4120
Dallas, Texas 75202
Telephone: (469) 557-9390
Facsimile: (469) 466-3232
Email:  jwalker@coleschotz.com

Joseph Barbiere (admitted *Pro Hac Vice*)
Eric T. Vissichelli (admitted *Pro Hac Vice*)
**COLE SCHOTZ P.C.**
25 Main Street
Court Plaza North
Hackensack, New Jersey 07601
Telephone: (201) 525-6213
Facsimile: (201) 678-6213
Email: jbarbiere@coleschotz.com
         evissichelli@coleschotz.com

*-and-*

*/s/ Michael S. Hargens*
Michael S. Hargens (MO #51077)
**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 283-4636
Facsimile: (816) 983-8080
Email:  Michael.hargens@huschblackwell.com

*Attorneys for Berkley Equity Limited and
Anthony Lyons*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been filed electronically and served on all counsel via the Court's CM/ECF system on June 2, 2023.

*/s/ Michael S. Hargens*
Michael S. Hargens