# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DRE HEALTH CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00031-RK |
| | ) |
| BERKLEY EQUITY LIMITED, and | ) |
| ANTHONY LYONS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This case is a business dispute concerning the production and sale of the personal protective equipment ("PPE") masks which came to prominence during the COVID-19 pandemic. This case was filed by DRE Health Corporation ("DRE") against Berkley Equity Limited ("Berkley") and Berkley's owner-operator Anthony Lyons ("Lyons"), and Berkley in turn asserted both counterclaims against DRE and third-party claims against its DRE's CEO Ahmed Isaac Bawany ("Bawany").[1]

Now pending is Plaintiffs' motion for summary judgment, (Doc. 184), which is fully briefed, (Docs. 185, 186, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 203, 207).[2] After careful consideration and review, the motion is **GRANTED in part** and **DENIED in part**, as explained below.

## I. Background

This case—which was first filed in January 2022 and has been litigated by several sets of attorneys—has been drawn-out and unwieldy. (*See, e.g.*, Docs. 26, 48, 55, 72, 79, 101, 108, 121, 136, 147, 148, 157, 160, 163, 165, 169, 171, 177, 178.) The same can be said of the parties' summary judgment briefing and exhibits. Those filings often leave unclear what the parties are specifically citing in the evidentiary record to support their various factual assertions and legal arguments. *Cf. generally* Fed. R. Civ. P. 56(c)(1); Local Rule 56.1. Based on a close and taxing review of the parties' filings, the Court finds the summary judgment record—i.e., the material facts about which there is no

---

[1] For ease and clarity, the Court generally refers to DRE and Bawany as "Plaintiffs" and to Berkley and Lyons as "Defendants," given each side's aligned interests.

[2] Citations are to the Court's CM/ECF docket system and the page numbers generated by it.

genuine issue—is as follows.[3] Below the Court first summarizes the record, then separately addresses Lyons's affidavit, and finally summarizes the pending claims and Plaintiffs' summary judgment motion, thereafter discussing and analyzing additional facts and details as necessary.

### A. The Summary Judgment Record

DRE is a medical supply business which manufactures and otherwise sells PPE such as masks. DRE's CEO is Bawany. Berkley is an investment entity in the business of purchasing and reselling masks. Berkley's sole owner and operator is Lyons.

In early September 2021, DRE and Berkley began discussing a business deal in which DRE would sell millions of masks to Berkley. There are genuine issues of material fact regarding what was said during these discussions: Bawany contends that Lyons and others assured him that Berkley could purchase a large quantity of masks, in that they stated Berkley had already lined up contracts with the end-buyers who would ultimately purchase the masks and was holding those end-buyers' money in escrow, (Doc. 185-1 ¶¶ 4-10, 18-19), while Lyons disputes that such representations were made. (Doc. 193 at ¶¶ 70-73.)

DRE and Berkley reached a deal which was ultimately embodied in an initial signed agreement, two invoices, and a second signed agreement. The parties' initial agreement is dated September 2, 2021, titled "Sale & Purchase Contract Package Structure," and referred to as the "SPA." (Doc. 188-1.) The record shows that Plaintiffs sent Defendants a complete draft of the SPA which included all terms discussed herein and that Lyons signed it on Berkley's behalf on September 2, 2021. (Doc. 207-2.)

In the SPA, the parties agreed that DRE would sell millions of masks to Berkley on an ongoing recurring basis, with Berkley making a series of periodic deposit and order payments, and DRE making a similar series of product deliveries. The SPA specifies only some aspects of the parties' deal, leaving other aspects to be addressed later or elsewhere. (*See* Doc. 188-1.) The SPA is for the masks described

---

[3] In discussing the summary judgment record, the Court distinguishes between whether a particular factual assertion is not disputed in this case at all, not controverted for purposes of summary judgment, or not subject to genuine issue. If in this case there is no dispute at all about a fact, then a citation to the record is unnecessary and thus the Court does not provide one. If in the summary judgment briefing there is no attempt to controvert a factual assertion, then the Court cites the parties' summary judgment statement of facts to show the fact is not controverted. In contrast, if in the summary judgment briefing a party does attempt to controvert a factual assertion, then the Court cites the record to indicate there is no genuine issue about the fact.

The Court omits facts about which there is a genuine issue, except where indicated by context and record citations to assist the reader. Additionally, the Court discusses only what is relevant here, thus omitting facts that are immaterial, not properly supported, or entirely legal argument and conclusions.

in the SPA's attached Annex A, (Doc. 188-1 at 3 ¶ 1 chart, 6 ¶ 6(a)), and Annex A states the masks' "country of origin" is "USA/PRC," (*id.* at 12), which means the United States of America and the People's Republic of China. Regarding delivery of the masks, the SPA states that DRE will provide Berkley with "an estimated Delivery Schedule (Annex B) updated from time to time, so that a final date of each delivery of the Product . . . can be agreed upon[.]" (*Id.* at 4 ¶ 2(a).) The SPA's Annex B is titled "Delivery Schedule" and states both that (1) once DRE receives an initial deposit payment for an order, then within ten business days it will provide a current delivery schedule for that order,[4] and (2) once DRE receives an initial deposit payment, it will confirm a more precise delivery schedule.[5] The SPA states it can be amended in writing, (*id.* at 8 ¶ 11(d)), and the SPA's paragraph 11(o) states that, if there is "any conflict between the terms of this [SPA] and the terms of any Invoice or Purchase Order, the terms of the Invoice or Purchase Order govern," (*id.* at 10 ¶ 11(o)).

The SPA contains provisions about Berkley paying an initial deposit to initiate DRE's production and provision of masks, (*id.* at 4), and, in connection with signing the SPA, Berkley paid DRE a $3,000,000 initial deposit.

Thereafter, DRE issued two invoices. One of the invoices—Invoice 279723, referred to as the "China Production Invoice"—is dated September 10, 2021, (Doc. 188-3 at 2), and the record indicates Defendants received it that day, (Doc. 188, Plfs.' Facts ¶¶ 34-35; Doc. 189-2 at 4.) The China Production Invoice is for 10 million boxes of masks—with each box to cost $1.10 and contain 50 masks—for a total price of $11,000,000, with "100% payment due upon cargo customs clearance in USA." (Doc. 188, Plfs.' Facts ¶¶ 16, 18; Doc. 188-3 at 2.) This invoice's delivery schedule estimates that the vessels carrying the masks would arrive between September 27 and October 6, 2021. (Doc. 188-3 at 4.)

As of October 1, 2024, all masks covered by the China Production Invoice had cleared customs in the United States. (Doc. 188, Plfs.' Facts ¶¶ 46, 47.) However, Berkley has never picked up or paid for any of the China Production Invoice masks. (Doc. 188, Plfs.' Facts ¶ 50.)

The parties' other invoice—Invoice 279722, referred to as the "Boxed Production Invoice"—is also dated September 10, 2021, and states it was revised on September 15, 2021, (Doc. 188-4 at 2), and the record indicates Defendants received it on those days. (Doc. 188, Plfs.' Facts ¶¶ 34-35; Doc.

---

[4] "Current delivery schedule of the initial order ten (10) business days after receipt of the Initial Deposit for completion of order." (Doc. 188-1 at 13.)

[5] "Once the Initial Deposit is received a more precise schedule will be confirmed based on current orders in the system[.]" (Doc. 188-1 at 13.)

189-2 at 4-5.) The Boxed Production Invoice is for a total of 144 million boxes of masks—specifically, 120 million boxes of blue masks with each box to cost $1.10 and contain 50 masks, and 24 million boxes of black masks with each box to cost $2.20—for at a total price of $184,800,000, with payment "due in full upon cargo being available for pickup." (Doc. 188, Plfs.' Facts ¶¶ 51, 53; Doc. 188-4 at 2.) Like the SPA, this invoice indicates DRE would provide masks on a recurring basis, estimating that a new delivery of masks would be available each week starting in September 2021, such that all masks would be delivered by March 2022. (Doc. 188-4 at 4.)

Due to delays in DRE making unspecified masks available, DRE and Berkley signed their second agreement on October 19, 2021. (Doc. 188, Plfs.' Fact ¶ 59.) This second agreement is titled as an Addendum to the SPA and referred to as the "Addendum." (Doc. 188, Plfs.' Fact ¶ 59.) The Addendum ratified the parties' SPA and other existing agreements, (*e.g.*, Doc. 188-5 at 2 "Recitals," at 2-3 ¶ 2, at 3 ¶ 3), and stated that DRE estimated it would begin delivering masks on October 31, 2021, (*id.* at 2 ¶ 2(a)(ii)). However, as is relevant here, the Addendum also amended their agreement as follows:

- By October 22, 2021, DRE would pay Berkley $1,500,000;
- If DRE did not pay that amount by that date, then, until it did so, DRE was required to pay Berkley $150,000 per day as liquidated damages; and
- DRE was required to pay those liquidated damages only if Berkley purchased masks as outlined in the parties' agreement.

(*Id.* at 2 ¶ 2(a)(i).)[6]

Although the Addendum required that DRE pay Berkley $1,500,000, DRE paid only $1,000,000.

Throughout November 2021, DRE advised Berkley the first delivery of Boxed Production Invoice masks was available for pick-up. (Doc. 188, Plfs.' Facts ¶¶ 60-62.) Two inspectors—Howard Witkin and Donavin Heard—confirmed that DRE's masks were in good condition and available for

---

[6] Doc. 188-5 at 2 ¶ 2(a)(i): "On or before October 22, 2021 (the "Payment Date"), [DRE] shall wire [Berkley], in immediately available funds, to the escrow account designated by [Berkley], the amount of One Million Five Hundred Thousand and 00/100 ($1,500,000.00) Dollars (the "Payment") in consideration for the additional l0MM masks waiting to arrive in the port of Los Angeles that [DRE] is repurchasing from [Berkley]. In the event the First Payment is not made on or before the Payment Date, as liquidated damages, [DRE] shall pay to [Berkley] the amount of One Hundred Fifty Thousand and 00/l00 ($150,000.00) Dollars per day for every day that the Payment is not made following the Payment Date, until the Payment is received by [Berkley]. Any damages are contingent upon Buyer's continued full performance under the SPA."

pick-up. (Doc. 188, Plfs.' Facts ¶¶ 66, 69-70, 80-82.) However, Berkley has never picked up or paid for any of the masks. (Doc. 188, Plfs.' Facts ¶ 54.)

Thereafter, DRE filed this case.

### B. Lyons's Affidavit

The Court writes separately about Lyons's affidavit, (Doc. 193), as Defendants' opposition to summary judgment heavily relies on it. Defendants argue Lyons has presented evidence that creates genuine issues and precludes summary judgment, (*see generally* Doc. 194), while Plaintiffs contend Lyons has submitted a sham affidavit which should be disregarded, (Doc. 207 at 5, 14-18).

"It is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021). "An affidavit is a sham affidavit and should be disregarded if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before." *Id.* (citation and quotation omitted).

Upon review, the Court finds Lyons's affidavit presents some sham testimony that must be disregarded. First, the Court disregards Lyons's testimony denying the version of the SPA he signed for Berkley contained a paragraph 11(o), which is the provision stating that any conflicts between the SPA and an invoice would be governed by the invoice. (*E.g.*, Doc. 193 ¶ 66.) Lyons's denial is directly contrary to the record, which shows that on September 2, 2021, Lyons was sent an unsigned version of the SPA which included paragraph 11(o), that same day he communicated with others about signing that version, and then he signed it. (Doc. 207-2.) Second, the Court disregards Lyons's testimony denying that Berkley timely received the China Production Invoice or the Boxed Production Invoice in September 2021 and stating that, "upon information and belief," DRE fraudulently backdated them to before the parties signed the Addendum in October 2021. (Doc. 193 ¶ 67.) Again, Lyons's denial is contrary to the record, which shows Plaintiffs sent Defendants the invoices on September 10 and 15, 2021, the same dates that appear on the invoices themselves. (Doc. 188, Plfs.' Facts ¶¶ 34-37; Doc. 189-2 at 4-5.) Given Lyons's recently raised denials are contrary to the record, the Court disregards them as an improper effort to avoid summary judgment, particularly because his denials are also contrary to the litigation positions Defendants have taken throughout this long-running case, (*see, e.g.*, Doc. 207-1). *See, e.g.*, *Gustafson v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 29 F.4th 406, 410 (8th Cir. 2022) ("Whenever a party takes a position in a legal proceeding and succeeds in maintaining that position, the doctrine of judicial estoppel operates to prevent that party from later assuming a contrary position.").

However, the Court finds that other testimony in Lyons's affidavit need not be disregarded—specifically, his denials that, during the parties' initial discussions, he and others assured Bawany that Berkley had already lined up sufficient end-buyers to purchase large quantities of masks and was holding in escrow money provided by those those end-buyers. (Doc. 193 at ¶¶ 70-73.) Based on the record presented, that testimony is not an "11th hour" contradiction of the record or reversal of litigation position and thus it is properly considered here. *See, e.g.*, *Garang*, 2 F.4th at 1122.

C. **Summary of the Parties' Claims and Plaintiffs' Summary Judgment Motion**

Reviewing Plaintiffs' and Defendants' operative pleadings, the parties are asserting the following claims, and Plaintiffs move for summary judgment on the claims as indicated:

| Count | Asserted by | Asserted against | Cause of action | Are Plaintiffs seeking summary judgment? |
|---|---|---|---|---|
| Count 1 | DRE | Berkley Lyons | Account stated | No |
| Count 2 | DRE | Berkley | Breach of contract: Boxed Production Invoice | Yes |
| Count 3 | DRE | Berkely | Promissory estoppel | No |
| Count 4 | DRE | Berkley | Specific performance | No |
| Count 5 | DRE | Berkley | Breach of contract: China Production Invoice | Yes |
| Count 6 | DRE | Berkley Lyons | Negligent misrepresentation | Yes |
| Count 7 | DRE | Berkley Lyons | Fraudulent inducement | Yes |
| Count 8 | DRE | Berkley Lyons | Fraudulent misrepresentation | Yes |
| Count 9 | DRE | Berkley Lyons | Civil conspiracy | No |
| Counterclaim 1 | Berkley | DRE | Breach of contract: SPA | Yes |

| Count | Asserted by | Asserted against | Cause of action | Are Plaintiffs seeking summary judgment? |
|---|---|---|---|---|
| Counterclaim 2 | Berkley | DRE | Breach of contract: Addendum | Yes |
| Counterclaim 3 | Berkley | DRE | Breach of the implied covenant of good faith and fair dealing | Yes |
| Counterclaim 4 | Berkley | DRE | Unjust enrichment | Yes |
| Counterclaim 5 | Berkley | DRE | Declaratory judgment | Yes |
| Counterclaim 6 Third-party claim 1 | Berkley | DRE Bawany | Fraudulent inducement | Yes |
| Counterclaim 7 | Berkley | DRE | Imposition of equitable trust / equitable lien | Yes |
| Third-party claim 2 | Berkley | Bawany | Abuse of the corporate form / alter ego | Yes |

(*See* Docs. 1, 49, 184.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 56 governs a motion for summary judgment. "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. Fed. R. Civ. P. 56(a). "Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). In this context, a fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the necessary inquiry is whether "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"A moving party is 'entitled to judgment as a matter of law' if the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof." *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant must "support" its motion either by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1), or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp.*, 477 U.S. at 325. "Once the movant fulfills its responsibility of informing the court of the basis for its motion, identifying the portions of the record that demonstrate the absence of a genuine issue of material fact, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 857 (8th Cir. 2018) (citation and quotation marks omitted). An "adverse party may not rely merely on allegations or denials, but must set out specific facts—by affidavits or other evidence—showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)).

"In considering a motion for summary judgment, the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted). Instead, the Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co.*, 893 F.3d at 1102 (citation and quotation marks omitted).

Two other principles governing a summary judgment motion are relevant here. In summary judgment briefing, a nonmoving party's failure to oppose a basis for summary judgment constitutes waiver of [the] argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). Such a failure to oppose includes failing to provide a substantive or meaningful response to an argument. *Nyaundi v. Triumph Foods, LLC*, No. 5:22-CV-06005-DGK, 2023 WL 3666876, at *5 n.3 (W.D. Mo. May 25, 2023). Relatedly, failing to respond indicates abandonment of a claim and can likewise support summary judgment. *Wegmann v. Ethicon, Inc.*, No. 4:20-CV-00704 JAR, 2020 WL 5814475, at *12 (E.D. Mo. Sept. 30, 2020). Second, as discussed above, the non-moving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

### III. Analysis

Plaintiffs move for summary judgment on several of their claims and on all of Defendants' claims. (Doc. 184.) The Court applies Missouri law because the parties' briefing discusses Missouri law, thus indicating they consent to it.

## A. DRE's breach of contract claims

DRE alleges two breach of contract claims, with Count 2 alleging breach of the Boxed Production Invoice, (Doc. 1 ¶¶ 84-95), and Count 5 alleging breach of the China Production Invoice, (*id.* ¶¶ 112-118). DRE contends it is entitled to summary judgment based on Berkley's failure to pick up and pay for any of the masks, (Doc. 188 at 26-34), and Berkley opposes by raising several arguments, (*see generally* Doc. 194).

Under Missouri law, a breach of contract claim has four elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). For a breach of contract claim, a plaintiff's damages are measured by the "benefit of the bargain" rule. *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. 1999). Under the rule, "a successful plaintiff is entitled to the loss the fulfillment of the contract would have avoided or that its breach has caused." *Id.*

Upon review, the Court concludes DRE is entitled to summary judgment in part. The Court finds no genuine issues as to the first three elements of DRE's contract claims. As to the first element, DRE and Berkley had an enforceable agreement with definite terms, consisting of the signed SPA, the China Production Invoice, the Boxed Production Invoice, and the signed Addendum. *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 n.5 (Mo. 2003) ("In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract [itself expressly].").

As to the second and third elements, the record establishes that DRE performed the parties' agreement and Berkley did not. DRE performed under the China Production Invoice, as DRE's masks covered by that invoice cleared customs in the United States. (Doc. 188, Plfs.' Facts ¶¶ 46, 47.) DRE also performed under the Boxed Production Invoice, as to the masks covered by that invoice that DRE made available for pick-up. (Doc. 188, Plfs.' Facts ¶¶ 60-62, 66, 69-70, 80-82.) Berkley acknowledges it has never picked up or paid for any of the masks under either the China Production Invoice or the Boxed Production Invoice. (Doc. 188, Plfs.' Facts ¶¶ 50, 54.) Further supporting these conclusions are the inspections that were conducted of DRE's masks and Defendants' communications about those masks, as they show the masks were in good order and otherwise readily available for pick-up. (*E.g.*, Doc. 188, Plfs.' Facts ¶¶ 61-71, 80-83.)

Berkley opposes summary judgment by making several arguments, which include that Berkely fraudulently added paragraph 11(o) to the SPA after Lyons had already signed it and backdated the

China Production Invoice and the Boxed Production Invoice. (Doc. 194 at 8-9.) For the reasons discussed above in connection with Lyons's affidavit, the Court rejects these arguments as contrary to the record.

Berkley's next argument is that masks DRE provided were non-compliant or otherwise unacceptable because they were produced in whole or in part in China, rather than solely in the United States. (Doc. 194 at 9-11.) But Berkley has not identified any contractual provision or other source of authority that requires the masks DRE provided to have been produced solely in the United States, and such a requirement would be contrary to the SPA's Annex A, which expressly stated that the masks' "country of origin" would be "USA/PRC." (Doc. 188-1 at 12.)

Berkley's final argument is that, because DRE breached both the SPA and the Addendum, the law prohibits it from seeking summary judgment on its breach of contract claims. *See, e.g.*, *Forms Mfg., Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo. App. E.D. 1985) ("A party to a contract cannot claim its benefits where he is the first to violate it."). As to the SPA, Berkley interprets Annex B to require that DRE provide masks within 10 business days of Berkley paying the SPA's deposit, and thus Berkley argues that, because it paid the deposit on September 3, 2021, and DRE did not timely provide masks thereafter, DRE breached the SPA first. (Doc. 194 at 3-5.) Similarly, Berkley also argues that the SPA required DRE to provide masks on a fixed schedule and DRE breached the SPA by not doing so. (Doc. 194 at 4-5.) The Court rejects these arguments as contrary to the plain language of the parties' agreements. The interpretation of a contract is an issue of law for the Court to decide, and the language of a contract is to be given its plain meaning. *E.g.*, *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553-54 (Mo. 2014). Reading the SPA in full, it clearly states DRE was to provide an estimated delivery schedule, (Doc. 188-1 at 4 ¶ 2(a)), and that delivery schedule—rather than the masks themselves—was due 10 business days after Berkley paid the SPA's deposit, (*id.* at 8 ¶ 11(d)). In addition, within 10 business days DRE provided the China Production Invoice and the Boxed Production Invoice, each of which contained more specific delivery schedules, thus indicating DRE did not breach the SPA.

Berkley makes a similar argument as to the Addendum, contending that it required DRE to pay Berkley $1,500,000 but DRE paid only $1,000,000,[7] and that it required that DRE provide 10,000,000

---

[7] As part of this argument, Berkley also invokes the Addendum's liquidated damages provision, which states that, if DRE did not pay Berkley $1,500,000 by October 22, 2021, then DRE was liable for liquidated damages of $150,000 per day until it made the full $1,500,000 payment. (Doc. 188-5 at 2 ¶ 2(a)(i).) Without deciding the issue, the Court notes that Missouri case law suggests this is not a viable liquidated damages clause

additional masks within two weeks. (Doc. 194 at 4-5.) There is no dispute that DRE did not pay $500,000 of what it owed under the Addendum, but the record does not support that the Addendum required DRE to provide 10,000,000 masks within two weeks.[8] However, DRE's failure to make that payment is no basis for concluding DRE cannot seek summary judgment on its contract claims, particularly given Berkley's breaches of the parties' agreement discussed above. *See Hawkins v. Foster*, 897 S.W.2d 80, 86 (Mo. App. S.D. 1995) ("A party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations or burdens.") (citation omitted).

Having rejected Berkley's opposition arguments, the Court finds DRE has established the first three elements of its contract claims and now turns to the fourth element: damages. Starting with the China Production Invoice, it was for 10 million boxes of masks, at a total price of $11,000,000, with "100% payment due upon cargo customs clearance in USA." (Doc. 188, Plfs.' Facts ¶¶ 16, 18; Doc. 188-3 at 2.) There is no genuine issue that DRE performed and Berkley did not, such that DRE is entitled under the China Production Invoice to benefit-of-the-bargain damages totaling $11,000,000. *Dierkes*, 991 S.W.2d at 669.

Turning to the Boxed Production Invoice, it was for a total of 144 million boxes of masks at a total price of $184,800,000. (Doc. 188, Plfs.' Facts ¶¶ 51, 53; Doc. 188-4 at 2.) Payment was "due in full upon cargo being available for pickup," (Doc. 188, Plfs.' Facts ¶¶ 51, 53; Doc. 188-4 at 2), and DRE was to deliver boxes on a weekly basis beginning in late October 2021, (Doc. 188-4 at 4; Doc. 188-5 at 2 ¶ 2(a)(ii)). There is no genuine issue that DRE's first shipment was available for pick-up in November 2021. (Doc. 188, Plfs.' Facts ¶¶ 64, 60-62, 66, 69-70, 80-82.) The record does not clearly establish the extent of the masks covered by the Boxed Production Invoice that DRE made available, but there is no genuine issue that DRE made available at least $5,400,000 worth of masks, (Doc. 188, Plfs.' Facts ¶ 60; Doc. 191-1 at 4), and thus DRE is entitled under the invoice to benefit-of-the-bargain damages totaling $5,400,000. *Dierkes*, 991 S.W.2d at 669.

---

but rather an unenforceable penalty clause. *See, e.g.*, *Franken v. Carpenter*, 364 S.W.2d 15, 19-20 (Mo. App. E.D. 1963).

[8] As best the Court can understand Berkley's argument, the Court believes Berkley is misinterpreting the Addendum's requirement that DRE "shall [deliver] to [Berkley] a delivery schedule for the Product during the six (6) month term in accordance with the SPA on or before October 19, 2021." (Doc. 188-5 at 2 ¶ 2(a)(ii).) This provision's plain language requires that DRE provide a delivery schedule for delivering masks, not the masks themselves.

As to any other damages that DRE seeks in Counts 2 and 5, the Court concludes DRE is not entitled to summary judgment. For instance, if DRE made available any other masks covered by the Boxed Production Invoice, that fact is not sufficiently established in the record to entitle DRE to summary judgment. Similarly, DRE appears to seek damages for the demurrage, labor, rent, shipping, and storage costs it incurred because Berkley did not promptly pick up the masks. (*See* Doc. 188, Plfs.' Facts ¶¶ 56, 72; Doc. 188 at 33-34.) Both invoices state that Berkley is "responsible for all customs duties, taxes, and additional fees," (Doc. 188-3 at 2; Doc. 188-4 at 2), and DRE presents evidence it paid some vendors, (Doc. 188, Plfs.' Facts ¶ 26), but the record contains insufficient information about the context and purpose of these payments for the Court to find that they constitute amounts Berkley was obligated to pay. Based on the record presented here, DRE is not entitled to summary judgment as to any other damages it seeks in Counts 2 and 5.

In summary, the record establishes that DRE is entitled to summary judgment on Count 2 in the amount of $5,400,000, and on Count 5 in the amount of $11,000,000, for a total of $16,400,000. However, Plaintiffs' briefing indicates that, because Berkley paid DRE a $3,000,000 initial deposit under the SPA and DRE paid Berkley $1,000,000 under the Addendum, damages should be offset by $2,000,000, (Doc. 188 at 33), reducing DRE's damages to $14,400,000.[9]

### B. DRE's misrepresentation-based claims

DRE alleges against both Berkley and Lyons three misrepresentation-based claims: Count 6 alleges negligent misrepresentation, (Doc. 1 ¶¶ 119-133); Count 7 alleges fraudulent inducement, (*id.* ¶¶ 134-150); and Count 8 alleges fraudulent misrepresentation, (*id.* ¶¶ 151-160). Each of these claims alleges in part that, before and while the parties were entering their agreements, Lyons and others made misrepresentations about Berkley having (1) agreements lined up with the end-buyers which would ultimately purchase the masks that DRE was to provide and (2) funds in escrow to pay DRE for those masks.

The Court concludes DRE is not entitled to summary judgment. Each of the claims asserted in Counts 6, 7, and 8, requires a misrepresentation.[10] The record contains genuine issues of material

---

[9] The Court notes that, given Berkley paid a $3,000,000 initial deposit under the SPA, and then DRE paid only $1,000,000 of the $1,500,000 payment agreed to in the Addendum, DRE's suggestion of a $2,000,000 offset would seem to account for the $500,000 Berkley contends it is owed under the Addendum, as DRE is not attempting to recover the $500,000 it did not pay.

[10] Count 6 alleges negligent misrepresentation, which has the following elements: "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and

fact about what Lyons and others communicated to Plaintiffs during the parties' initial discussions about their deal before they signed the SPA. Accordingly, the Court will deny DRE summary judgment on its Counts 6, 7, and 8.

### C. Berkley's contract-based counterclaims

Turning to Defendants' claims, Berkley alleges three contract-based claims. Berkley's Counterclaim 1 alleges DRE breached the SPA, (Doc. 49 at 34), and its Counterclaim 2 alleges DRE breached the Addendum, (*id.* at 35). For the reasons discussed above, the record indicates that DRE performed under the parties' agreement, and the Court rejects Berkley's opposition arguments. Accordingly, the Court will grant DRE summary judgment on Berkley's Counterclaims 1 and 2.

Berkley's Counterclaim 3 alleges DRE breached the implied covenant of good faith and fair dealing. (Doc. 49 at 35-36.) Specifically, Berkley alleges that the "SPA and the Addendum each include an implied covenant that the parties thereto will act in good faith and deal fairly with each other," (*id.* at 36 ¶ 79), and that "DRE breached the implied covenant of good faith and fair dealing by luring Berkley into the SPA and the Addendum despite knowing that it lacked the capability to perform its obligations thereunder," (*id.* at 36 ¶ 81). DRE moves for summary judgment by arguing this counterclaim is based on a fundamental chronological flaw: Berkley's allegations concern events that occurred *before* the parties formed their agreements, whereas the implied covenant did not exist until *after* they formed those agreements. (Doc. 188 at 41-42.)

The Court concludes DRE is entitled to summary judgment. First, Berkley did not substantively respond to DRE's arguments, (*see* Doc. 194), which amounts to a waiver of its arguments and abandonment of its implied covenant claim. *See, e.g.*, *Nyaundi v. Triumph Foods, LLC*, No. 5:22-CV-06005-DGK, 2023 WL 3666876, at *5 n.3 (W.D. Mo. May 25, 2023). Second, the law and record

---

(5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010).

Count 7 alleges fraudulent inducement, which "is a subset of fraudulent misrepresentation, applicable where a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved." *Harriman Oil Co. v. Baker*, No. 4:11CV01344 AGF, 2012 WL 252233, at *2 (E.D. Mo. Jan. 26, 2012). Fraudulent inducement has the following elements: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury." *Midwest Printing, Inc. v. AM Int'l, Inc.*, 108 F.3d 168, 170 (8th Cir. 1997).

Count 8 alleges fraudulent misrepresentation, which has the same elements as fraudulent inducement discussed above. *Renaissance Leasing*, 322 S.W.3d at 131-32.

support DRE. "Missouri law implies a covenant of good faith and fair dealing in every contract." *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 188 (Mo. App. W.D. 2017) (cleaned up). "A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement." *Id.* at 188. This body of law does not fit Berkley's allegations, as they contend DRE allegedly lured it into forming agreements in the first instance, as opposed to DRE unfairly exploiting the rights conferred by the parties' existing agreements. *See Burtch v. A.T. Still Univ. of Health Scis.*, No. 2:23CV15 HEA, 2024 WL 1156442, at *6 (E.D. Mo. Mar. 18, 2024) (explaining that a contract "must exist before the duty of good faith and fair dealing can be implied by law into it.") (cleaned up). Accordingly, the Court will grant DRE summary judgment on Berkley's Counterclaim 3 for breach of the implied covenant of good faith and fair dealing.

### D. Berkley's unjust enrichment counterclaim

Berkley's Counterclaim 4 alleges unjust enrichment, contending that, even though DRE did not deliver any masks, it retained Berkley's initial deposit payment. (Doc. 49 at 36.) This claim is labeled as "alternative relief," (*id.* at 36), indicating that Berkley is alleging this claim in the alternative to its breach-of-contract claims. DRE moves for summary judgment by arguing that, given the parties' express agreements, Berkley cannot assert an unjust enrichment claim. (Doc. 188 at 42-43.)

The Court concludes DRE is entitled to summary judgment. First, Berkley did not substantively respond to DRE's arguments, (*see* Doc. 194), which amounts to a waiver of its arguments and abandonment of its unjust enrichment claim. *See, e.g.*, *Nyaundi*, 2023 WL 3666876, at *5 n.3. Second, the law and record support DRE. "There can be no unjust enrichment claim [] where an express contract exists." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010)). Given that the record establishes that DRE and Berkley formed express agreements and that Berkley's Counterclaims 1 and 2 allege DRE breached those agreements, Berkley cannot also assert an unjust enrichment claim. Accordingly, the Court will grant DRE summary judgment on Berkley's Counterclaim 4 for unjust enrichment.

### E. Berkley's declaratory judgment counterclaim

Berkley's Counterclaim 5 seeks a declaratory judgment that DRE breached the parties' agreements and thus Berkley has no obligation to perform under them. (Doc. 49 at 37-38.) DRE

moves for summary judgment arguing that this declaratory judgment claim is nothing more than a masked breach-of-contract claim. (Doc. 188 at 43-44.)

The Court concludes DRE is entitled to summary judgment. First, Berkley did not substantively respond to DRE's arguments, (*see* Doc. 194), which amounts to a waiver of its arguments and abandonment of its declaratory judgment claim. *See, e.g.*, *Nyaundi*, 2023 WL 3666876, at *5 n.3. Second, the law and record support DRE. "One requisite element to maintain an action for declaratory judgment is the absence of an adequate remedy at law." *Cincinnati Cas. Co. v. GFS Balloons*, 168 S.W.3d 523, 525 (Mo. App. E.D. 2005). "A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract." *Id.* If a party's declaratory judgment claim merely alleges breach of a contract, the claim fails. *Id.* at 525-26. Here, Berkley's declaratory judgment claim fails because it merely restates its arguments about and defenses to the contract claims DRE alleges in its Counts 2 and 5. Accordingly, the Court will grant DRE summary judgment on Berkley's Counterclaim 5 for declaratory judgment.

### F. Berkley's fraudulent inducement claim

Berkley alleges fraudulent inducement in its Counterclaim 6 against DRE and its Third-Party Claim 1 against Bawany. Berkley's claim is based on the allegation that, from August to December 2021, Bawany misrepresented that (1) "DRE had the financial and logistical capability to produce and deliver the [masks] in accordance with the schedule and additional terms in the SPA" and (2) Berkley's initial deposit payment "would be used for the sole purpose of obtaining raw materials and in furtherance of performing its obligations under the SPA[.]" (Doc. 49 at 38 ¶ 95.) Plaintiffs move for summary judgment based on the economic loss doctrine, arguing it bars the claim because Berkley's alleged misrepresentations are not independent of the parties' agreements. (Doc. 188 at 44-46.)

The Court has discussed and applied the economic loss doctrine in a previous order. (*See* Doc. 121.) As the Court wrote there, under Missouri law the economic loss doctrine prohibits "a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. App. S.D. 2010). Missouri case law indicates that, if the plaintiff's alleged damages are purely economic, then recovery in tort is available only if "there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Id.* Stated differently, "the economic loss doctrine does not 'categorically' bar fraud and misrepresentation claims that arise in cases involving contractual relationships." *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014). A tort

claim can go forward if it is "based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement." *Id.* To determine whether a tort claim is independent of the contract for purposes of the economic loss doctrine, "two critical factors" to consider are: "(1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract" and "(2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Id.* at 904.

Upon review, the Court concludes Plaintiffs are entitled to summary judgment. First, Berkley did not substantively respond to DRE's arguments, (*see* Doc. 194), which amounts to a waiver of its arguments and abandonment of its fraudulent inducement claim. *See, e.g.*, *Nyaundi*, 2023 WL 3666876, at *5 n.3. Second, the law and record support DRE. Berkley did not specify its alleged damages, (Doc. 49 at 39 ¶ 101), but context indicates they are purely economic, and as a result the economic loss doctrine bars Berkley's claim. This is because Berkley's allegations do not concern personal injury or any type of property damage and destruction. *Autry Morlan*, 332 S.W.3d at 192. It is also because Berkley alleges misrepresentations and damages which are not independent of the parties' agreement. *Superior Edge*, 44 F. Supp. 3d at 903-04. One misrepresentation Berkley alleges concerns production and delivery of masks, which is the precise subject matter of the parties' agreement. (*See, e.g.*, Doc. 188-1.) The other misrepresentation Berkley alleges concerns its initial deposit payment to DRE, which was expressly addressed in the parties' agreement. (*E.g.*, *id.* at 4.) And finally, all indication is that Berkley's alleged damages arise solely from the parties' agreement, rather than anything outside the contract. In light of the summary judgment record, any further damages are purely speculative. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (noting that while we review summary judgment "mak[ing] all reasonable inferences in favor of the nonmoving party," we must do so "without resort to speculation"). Accordingly, the Court will grant Plaintiffs summary judgment on Berkley's fraudulent inducement claim.[11]

---

[11] This ruling is not inconsistent with the Court's previous order about the economic loss doctrine, (Doc. 121). In that order, the Court considered Defendants' argument that the doctrine entitled them to summary judgment on DRE's misrepresentation-based claims—i.e., DRE's Counts 6, 7, and 8, in which DRE alleged Berkley and Lyons made misrepresentations about having end-buyers lined up to buy DRE's masks, having in escrow the funds necessary to pay DRE for the masks, and providing imminent payment. The Court ruled the economic loss doctrine did not bar DRE's claims because (1) the parties' agreement did not address end-buyers or escrow funds, such that misrepresentations about them were independent of the agreement and (2) misrepresentations about providing imminent payment concerned Defendants' ability to perform under the parties' agreement. (Doc. 121 at 5-8.) In contrast, as discussed above, Berkley alleges Plaintiffs made misrepresentations about production and delivery of masks and Berkley's initial deposit payment, both of which the parties' agreement expressly addresses.

### G. Berkley's constructive trust and equitable lien counterclaim

Berkley's Counterclaim 7 against DRE is a claim for the imposition of a constructive trust or equitable lien, in which Berkley generally alleges DRE has kept Berkley's initial deposit payment even though it has not provided any masks and specifically alleges DRE improperly used Berkley's money to benefit itself by building a California factory. (Doc. 49 at 39-40.) DRE moves for summary judgment by arguing Berkley has not presented anything to support the extraordinary remedy of a constructive trust and equitable lien. (Doc. 188 at 46-47.)

The Court concludes DRE is entitled to summary judgment. First, Berkley did not substantively respond to DRE's arguments, (*see* Doc. 194), which amounts to a waiver of its arguments and abandonment of its constructive trust and equitable lien claim. *See, e.g.*, *Nyaundi*, 2023 WL 3666876, at *5 n.3. Second, the law and record support DRE. A constructive trust—which is "a method by which a court exercises its equitable powers to remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith reposed in another"—requires "an extraordinary degree of proof[.]" *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. 1993) (cleaned up). Berkley's claim fails under this standard, as the record shows the parties' agreement concerns a sale of goods, rather than a fiduciary or confidential relationship, the existence of undue influence, a viable unjust enrichment or fraud claim, or anything similar that might be able to support the imposition of a constructive trust. *See, e.g.*, *id.* at 765-66; *Ralls Cnty. Mut. Ins. Co. v. RCS Bank*, 314 S.W.3d 792, 795-96 (Mo. App. E.D. 2010). The same is true of Berkley's invocation of an equitable lien. *See, e.g.*, *Cmty. Bank of Chillicothe v. Campbell*, 870 S.W.2d 838, 842 (Mo. App. W.D. 1993) ("For an equitable lien to be invoked, there must be a debt, a duty or an obligation owing by one person to another; a res to which the obligation attaches, which can be identified or described with reasonable certainty; and an intent, express or implied, that the property serve as security for the debt or obligation.") (cleaned up). Accordingly, the Court will grant DRE summary judgment on Berkley's Counterclaim 7 seeking a constructive trust and equitable lien.

### H. Berkley's claim for abuse of the corporate form and alter ego liability

For its final claim, Berkley's Third-Party Claim 2 alleges Bawany has abused DRE's corporate form and is its alter ego by withholding money from Berkley, engaging in deceptive business practices, and the like. (Doc. 49 at 39-40.) Bawany moves for summary judgment by arguing Berkley has no evidence he improperly exerted complete control and dominion over DRE so as to pierce its corporate veil. (Doc. 188 at 47-49.)

The Court concludes DRE is entitled to summary judgment. First, Berkley did not substantively respond to DRE's arguments, (*see* Doc. 194), which amounts to a waiver of its arguments and abandonment of its corporate form and alter ego claim. *See, e.g.*, *Nyaundi*, 2023 WL 3666876, at *5 n.3. Second, the law and record support DRE. Generally, a business entity is considered a wholly separate and distinct legal entity from its owners. *Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. App. E.D. 2014). However, in "narrow circumstances" a court will disregard the business entity, allowing a plaintiff to pierce the entity's corporate veil and thus directly hold the entity's owners liable for the entity's torts or debts. *Id.* To do so, a plaintiff must satisfy a three-part test which focuses on an owner exploiting his or her complete dominion over the business entity to perpetuate wrongdoing.[12] Here, Berkley has presented no evidence sufficient to establish that Bawany exercised complete dominion over DRE and its business practices. To the contrary, although Bawany was DRE's CEO, the record indicates he was not the sole member of its board of directors, (Doc. 192-14 at 4), which indicates Bawany was not in sole control of DRE and its affairs. Accordingly, the Court will grant Bawany summary judgment on Berkley's claim to pierce DRE's corporate veil.

## IV. Conclusion

Accordingly, after careful consideration and for the reasons explained above, Plaintiffs' motion for summary judgment, (Doc. 184), is **GRANTED in part** and **DENIED in part**, as follows:

- A. On DRE's Counts 2 and 5 alleging breach of contract, summary judgment for DRE is **GRANTED** against Berkley in the collective total amount of $14,400,000;
- B. On DRE's Counts 6, 7, and 8 alleging misrepresentation-based claims, summary judgment for DRE is **DENIED**;
- C. On Berkley's Counterclaims 1, 2, and 3 alleging contract-based claims, summary judgment for DRE is **GRANTED**;
- D. On Berkley's Counterclaim 4 alleging unjust enrichment, summary judgment for DRE is **GRANTED**;
- E. On Berkley's Counterclaim 5 alleging a declaratory judgment claim, summary judgment for DRE is **GRANTED**;

---

[12] "Courts will pierce the corporate veil or disregard the business entity once a plaintiff demonstrates a three-pronged test: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Hibbs*, 430 S.W.3d at 306.

F.  On Berkley's Counterclaim 6 and Third-Party Claim 1 alleging fraudulent inducement, summary judgment for Plaintiffs is **GRANTED**;

G.  On Berkley's Counterclaim 7 alleging a constructive trust and equitable lien claim, summary judgment for DRE is **GRANTED**; and

H.  On Berkley's Third-Party Claim 2 alleging abuse of the corporate form and alter ego liability, summary judgment for Bawany is **GRANTED**.

Based on these rulings, the Court understands the following claims remain:

| Count | Asserted by | Asserted against | Cause of action |
| --- | --- | --- | --- |
| Count 1 | DRE | Berkley<br>Lyons | Account stated |
| Count 2 | DRE | Berkley | Breach of contract: Boxed Production Invoice, as to any other remaining damages |
| Count 3 | DRE | Berkely | Promissory estoppel |
| Count 4 | DRE | Berkley | Specific performance |
| Count 5 | DRE | Berkley | Breach of contract: China Production Invoice, as to any other remaining damages |
| Count 6 | DRE | Berkley<br>Lyons | Negligent misrepresentation |
| Count 7 | DRE | Berkley<br>Lyons | Fraudulent inducement |
| Count 8 | DRE | Berkley<br>Lyons | Fraudulent misrepresentation |
| Count 9 | DRE | Berkley<br>Lyons | Civil conspiracy |

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 6, 2024