# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| DRE HEALTH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-00031-RK |
| | ) | |
| BERKLEY EQUITY LIMITED and | ) | |
| ANTHONY LYONS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff DRE Health Corporation's motion to pierce Berkley Equity Limited's corporate veil and hold Defendant Anthony Lyons personally liable for any judgment entered against Berkley. (Doc. 306.) This motion is fully briefed. (Docs. 307, 333, 334, 339.) After careful consideration and review, the Court **ORDERS** that DRE Health Corporation's motion to pierce Berkley Equity Limited's corporate veil is **GRANTED**.

## Background

This case arises from a business dispute between Plaintiff DRE Health Corporation ("DRE"), a producer and seller of personal protective equipment, and Defendants Berkley Equity Limited ("Berkley") and Anthony Lyons, Berkley's owner-operator, who sought to purchase millions of face masks from DRE.

This case has a complex procedural and factual history, which the Court has addressed more fully in previous orders and its Order on DRE's Omnibus Post-Trial and Sanctions Motions. (Doc. 345.) In brief, DRE filed suit against Berkley and Lyons on January 18, 2022. (Doc. 1.) DRE asserted breach of contract claims alleging that it produced or otherwise made available masks for pick up and payment in accordance with the parties' agreement and that Berkley never picked up or paid for any masks. Further, DRE asserted misrepresentation-based claims alleging that Defendants made false representations to DRE to induce it into entering the agreement. (*See generally* Doc. 1.) On December 6, 2024, the Court entered an Order granting in part DRE's motion for summary judgment finding in favor of DRE on its breach of contract claims against Berkley and concluding that DRE suffered at least $14,400,000 in damages as a result. (Doc. 217.) Finally, this case culminated in a jury trial which began on January 13, 2025, and continued

through January 27, 2025, when the jury returned verdicts in favor of Defendants on all issues and claims that proceeded to trial. (*See generally* Doc. 326.)

For purposes of resolving DRE's motion to pierce Berkely's corporate veil, the Court notes the following relevant facts, which both parties stipulated as uncontroverted:

4.    Berkley is a "shell company."

5.    Lyons is and was at all relevant times the Chairman of Berkley.

6.    Lyons is and was at all relevant times the sole owner of Berkley.

. . . .

9.    On September 2, 2021, Lyons executed the Sale and Purchase Agreement ["SPA"] on behalf of Berkley pursuant to which Berkley would purchase large quantities of blue and black surgical DRE DMF17 masks from DRE.

10.    Berkley had zero assets at the time it entered into the SPA.

. . . .

19.    The total value of the Boxed Production Invoice was $184,800,000.[1]

(Doc. 227 at 1-3.)

Lyons' trial testimony corroborates the above stipulated facts and provides additional relevant facts. For example, Lyons testified that Berkley does not have a board of directors, (Doc. 319 at 757:12-758:6),[2] or any employees, (*id.* at 758:7-8). Berkley also does not have any financial statements. (*Id.* at 760:8-9.) Lyons confirmed that Berkley was a shell company with no assets at the time it entered the SPA, or anytime thereafter. (*See* Doc. 319 at 742:2-6, 755:8-12; 758:10 (It's a shell company. I think that speaks for itself.").) Further, Lyons testified that he directly funded Berkley's obligations—such as the $3 million initial deposit paid to DRE—from his personal bank account. (Doc. 319 at 758:12-17.)

Further facts are set forth as necessary below.

---

[1] This amount does not include the $11,000,000 due under the smaller invoice. (Pl. Ex. 3.) The two invoices total $195,800,000.

[2] The trial transcript appears in ten volumes on the Court's case management and electronic filing system at Docs. 317-326. When referring to the trial transcript, the Court references the Doc. number assigned in the CM/ECF filing system, for example Doc. 317 for January 13, 2025 (the first day of trial). The Court does not reference the page number assigned by CM/ECF, however. Instead, the references to page numbers in the trial transcript refer to the consecutive pagination across all ten volumes of the transcript.

**Legal Standard**

In the Eighth Circuit, "[w]hether to pierce a corporate veil is a legal determination that is governed by state law." *Depositors Ins. v. Hall's Rest., Inc.*, 717 F. App'x 653, 653 (8th Cir. 2018) (citing *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997)). Under Missouri law,[3] the party moving to pierce the corporate veil must show:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992) (quoting *Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986)).[4]

Further, the Court concludes that this motion is best construed as a Rule 50(b) renewed motion for judgment as a matter of law on the issue of whether to pierce Berkley's corporate veil, as this case was submitted to a jury.[5] *See* Fed. R. Civ. P. 50; *see also Weitz Co. v. MH Washington*, 631 F.3d 510, 519-521 (8th Cir. 2011) (treating district court's ruling that a defendant was either an alter ego of or in a principal/agent relationship with another defendant as a Rule 50 judgment as a matter of law). "The grounds for [a] renewed motion under Rule 50(b) are limited to those asserted in [an] earlier Rule 50(a) motion." *See Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 821 (8th Cir. 2004). Here, the Court finds that DRE properly asserted its

---

[3] DRE cites Missouri law in support of its motion, and both parties submitted jury instructions applying Missouri law to the issue of piercing the corporate veil. (Doc. 242 at 50, 56; Doc. 252 at 24-26.) Thus, it appears that the parties agree that Missouri substantive law governs this issue. Further, DRE's Terms & Conditions, which are incorporated in the parties' agreement, also state that Missouri law governs conflicts arising out of the agreement. (Pl. Ex. 2 at § 20.2.)

[4] Both parties proposed jury instructions on the question of piercing the corporate veil. (Doc. 242 at 50, 55-56; Doc. 252 at 24-26.) A veil piercing instruction was omitted from the final jury instructions at the parties' request and with the understanding that the parties could assert their arguments to the Court in a post-trial motion. (Doc. 323 at 1730:5-11.)

[5] DRE refers to the Court's "equitable powers" as permitting it to decide the motion. (Doc. 306 at 1.) DRE does not suggest a standard by which the Court should review the facts in resolving the motion.

3

argument that the Court should pierce Berkley's corporate veil and hold Lyons personally liable for any judgment entered against Berkley in a Rule 50(a) motion prior to the submission of the case to the jury. (*See* Doc. 273.)

When deciding a renewed motion for judgment as a matter of law, the Court may "direct entry of judgment as a matter of law" against the nonmoving party, Fed. R. Civ. P. 50(b)(3), where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a). *See also ContiTech USA, Inc. v. McLaughlin Freight Servs., Inc.*, No. 3:20-cv-00075-SMR-SBJ, 2023 WL 2300398, at *3 (S.D. Iowa Jan. 25, 2023) ("The substantive standards for a Rule 50(a) motion and Rule 50(b) motion are the same." (citing *Walmart, Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1108 (8th Cir. 2020))). The Court "should review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence." *Duban v. Waverly Sales Co.*, 760 F.3d 832, 835 (8th Cir. 2014).

## Discussion

DRE argues that the parties' stipulation of uncontroverted facts in addition to Lyons' trial testimony entitles DRE to judgment as a matter of law on the issue of piercing the corporate veil. In their briefing in opposition to the motion, (Docs. 333, 334), Defendants only argue that the uncontroverted facts asserted by DRE are insufficient to establish the elements of piercing the corporate veil under Missouri law. Defendants do not dispute any of the facts in DRE's motion, nor do they point the Court to any facts in the record from which the Court should draw an inference in Defendants' favor which would defeat DRE's motion or any facts which counsel against piercing the corporate veil.

At trial, defense counsel additionally argued that DRE's veil piercing theory should fail because DRE did not plead it in the complaint. (Doc. 317 at 39:10-40:17; Doc. 323 at 1692:3-10.) Defense counsel relied on *Blanks v. Flour Corp.*, 450 S.W.3d 308 (Mo. Ct. App. 2014), in so arguing. However, pleading matters in federal court are generally considered procedural and are thus governed by federal pleading standards. *See Council Tower Ass'n v. Axis Specialty Ins.*, 630 F.3d 725, 730 (8th Cir. 2011) (applying federal pleading standards and Missouri substantive law to review district court's dismissal for failure to state a claim). It does not appear that there is any

4

federal rule requiring a party to explicitly plead a theory of piercing the corporate veil.[6] Further, given Defendants submitted jury instructions pertaining to the issue of piercing the corporate veil, (Doc. 252 at 24-26), it appears the parties were on notice that the issue was being tried and consented to such. *See* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. . . . [F]ailure to amend does not affect the result of the trial of that issue."). And finally, Defendants failed to reassert this argument in opposition to DRE's post-trial motion to pierce the corporate veil. (*See generally* Docs. 333, 334.) Therefore, the Court proceeds to consider DRE's motion to pierce Berkley's corporate veil on the merits.

## I.     Control over Corporate Entity

DRE argues that Lyons has complete control over Berkley because, *inter alia*, he is the sole owner of Berkley, Berkley did not observe any corporate formalities, and Berkley is a shell company with no assets. (Doc. 307 at 4-5.) Defendants do not contest these facts, nor could they. Instead, Defendants argue that each fact is merely one factor in determining whether complete control over the entity exists, and that no single fact is dispositive of the issue of control. (Doc. 334 at 3.) However, Defendants do not point to *any* factor under Missouri law which weighs against finding of complete control in this case.

To start, Lyons is and always has been the sole owner of Berkley. (Doc. 319 at 741:24-742:1; Doc. 227 at ¶ 6.) He also is and has been at all relevant times the Chairman of Berkley. (Doc. 320 at 984:23-24; Doc. 227 at ¶ 5.) "Factors relevant to a determination whether control by a person . . . over another corporation was to the extent required for the corporate veil to be pierced include the ownership and creation of both corporations [and] the management of the corporations . . . ." *Favazza v. Path Media Holdings, LLC*, No. 4:12-cv-01561-TCM, 2014 WL 1846109, at *7 (E.D. Mo. May 8, 2014) (citation omitted). Because Lyons is the sole owner and Chairman of Berkley, the ownership and management factors favor finding that complete control exists to satisfy the first element of piercing the corporate veil.

---

[6] For example, federal courts only require separate claims for relief to be pleaded in separate counts. Fed. R. Civ. P. 10(b) ("[E]ach claim founded on a separate transaction or occurrence. . . must be stated in a separate count."). Therefore, federal courts have found that piercing the corporate veil is not a separate cause of action for which relief can be granted, rather it is a theory to impose liability on an individual for the acts of an entity. *See Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011).

Additionally, Berkley does not observe any corporate formalities. *See Commonwealth Land Title Ins. v. Miceli*, 480 S.W.3d 354, 372 n.10 (Mo. Ct. App. 2015) ("[A] factor to be considered in the dominion and control inquiry is whether there was a failure to observe corporate formalities."). For example, Berkley does not have a board of directors, (Doc. 319 at 757:12-758:6), any employees, (*id.* at 758:7-8), or any financial statements, (*id.* at 760:8-9). Further, Berkley is a shell company and did not have any assets at the time it entered the SPA, or anytime before or after entering the SPA for that matter. (*See* Doc. 319 at 755:8-12, 742:2-6; Doc. 227 at ¶¶ 4, 10.) Rather, Lyons directly funded Berkley's obligations—such as the $3 million initial deposit—from his personal bank account. (Doc. 319 at 758:12-17.) *See Garrett v. Albright*, No. 4:06-cv-04137-NKL, 2008 WL 920310, at *7 (W.D. Mo. Apr. 1, 2008) (applying Missouri law and noting undercapitalization is relevant to the question of control); *see also Commonwealth Land Title Ins.*, 480 S.W.3d at 372 n.10 ("Commingling of assets is one factor indicating the corporate form has been ignored.").

Finally, Lyons' trial testimony supports finding that he has complete control over Berkley, as he effectually admitted to being Berkley itself:

Q. What is your position at Berkley?

[Lyons]. I don't really have a position at Berkley. It's just—it's a shell company. And you're looking at it. You're looking at me.

(Doc. 319 at 742:12-15; *see also* Doc. 324 at 1865:19-20 ("Q. Okay. And you're Berkley. Right? [Lyons]. I am Berkley.").) As a result, the Court finds DRE has shown, based on the uncontroverted facts and Lyons' trial testimony, that Lyons exercised complete control over Berkley, and the first element of piercing the corporate veil under Missouri law is established as a matter of law.

## II. Fraud or Wrongdoing

The Court next considers whether the control Lyons exercised over Berkley was "used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights." *Radaszewski*, 981 F.2d at 306 (quoting *Collet*, 708 S.W.2d at 284). Defendants argue that the jury verdict in favor of Defendants on DRE's misrepresentation-based claims demonstrates DRE cannot establish the second element required to pierce the corporate veil. (Doc. 333 at 3.) However, even if this were the case, "[t]he plaintiff need not show actual fraud; injustice or inequitable consequences

6

are sufficient to justify piercing the veil." *Sisson*, 2022 WL 497347, at *8 (citing *K.C. Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545, 549 (Mo. Ct. App. 1991)). "Examples of such wrongs as would satisfy this standard include actual torts, violations of statutory duties, undercapitalization, or the stripping of assets from the subservient corporation." *Collet*, 708 S.W.2d at 286.

DRE argues that Lyons used his control over Berkley to commit fraud, wrong, and contravene DRE's rights, specifically by (1) using Berkley to enter the SPA which obligated Berkley to pay $195,800,000[7] while never infusing Berkley with any assets, leaving it woefully undercapitalized; (2) purposefully establishing this structure with Berkley to avoid personal liability for the obligations incurred by Berkley; and (3) sending a $1.9 billion proof of funds to DRE from a third-party bank account that neither Lyons nor Berkley had access to or control over. (Doc. 307 at 5-6.)[8] Defendants respond that undercapitalization alone is insufficient to pierce the corporate veil and the provision of proof of funds from a third-party account does not rise to the level of wrongdoing required to pierce the corporate veil.

As a general matter, under Missouri law "[i]nadequate capitalization is circumstantial evidence tending to show an improper purpose or reckless disregard for the rights of others[.]" *Sisson*, 2022 WL 497347, at *9 (citing *66, Inc. v. Crestwood Commons Redev. Corp.*, 998 S.W.2d 32, 41 (Mo. 1999)); *see also Weitz Co.*, 631 F.3d at 521 ("Making a corporation a supplemental part of an economic unit and operating it without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending to show either an improper purpose or reckless disregard of the rights of others." (quoting *Collet*, 708 S.W.2d at 287)). Accordingly, "[u]ndercapitalizing a subsidiary, which we take to mean creating it and putting it in business without a reasonably sufficient supply of money, has become a sort of proxy under Missouri law for the second *Collet* element." *Radaszewski*, 981 F.2d at 308.

In *Collet*, the court found that the dominant corporation severely undercapitalized and stripped assets from its subservient corporation, leaving the subservient corporation's "creditors

---

[7] This amount includes $184,800,000 due under the larger invoice, (Doc. 227 at 3), and $11,000,000 due under the smaller invoice, (Pl. Ex. 3).

[8] DRE does not argue that Berkley's breach of contract establishes the second element of piercing the corporate veil, and the Court notes that breach of contract alone is insufficient to establish the second element of piercing the corporate veil under Missouri law. *Weitz Co.*, 631 F.3d at 522 ("Missouri law does not state that a breach of contract by the controlled corporation caused by the dominant corporation satisfies *Collet*'s second prong . . . .").

with recourse to an amount of assets far less than the amount necessary or usual in that industry." *Collet*, 708 S.W.2d at 286-87. The court concluded that this course of conduct "made it impossible for Stores to operate and satisfy its obligations, and justifie[d] piercing the corporate veil." *Id.* at 287. Here, the uncontroverted record before the Court clearly shows that Berkley was operating at all times with no assets, making it undercapitalized insofar as it was unable to meet the obligations it entered into—including the SPA. Instead, as monies became due—such as the $3 million initial deposit—Lyons drew funds from his personal accounts to make those payments. This course of conduct left Berkley unable to meet its obligations without an infusion of funds from its owner and controller, Lyons.

Again, Defendants emphasize that undercapitalization alone is insufficient to establish the second element of piercing the corporate veil, and that Missouri caselaw requires further evidence of fraud or wrongdoing. (Doc. 334 at 4.) The Court finds that this argument overstates Missouri caselaw. Admittedly, in *Collet*, the court noted both that the subservient corporation was undercapitalized and the dominant corporation had stripped assets from it. However, unlike in *Collet* where the subservient corporation had at least *some assets* which could be stripped, Lyons' undercapitalization of Berkley was so severe that there were *no assets* at all. Thus, the lack of asset stripping (in the absence of any assets to strip) is an unpersuasive argument against finding wrongdoing here.

Similarly, in *Sisson*, the evidence showed undercapitalization as well as an intent to make the undercapitalized corporation "precisely so they would be in a position where they could not afford to pay—or be legally compelled to pay—the rent." 2022 WL 497347, at *9. Defendants argue that DRE has not shown that Lyons acted with intent to deceive or avoid obligations. Drawing inferences that can be drawn from the record in Defendants' favor, the Court agrees that an inference can be made that Lyons did not intentionally undercapitalize Berkley so that it would not be able to fulfill its obligations to DRE. Lyons' testimony indicates that he set up Berkley, in part, because of its limited liability. (Doc. 320 at 949:23-950:3 ("[Lyons]. And there was definitely a limited liability aspect. The whole point of anybody doing business in a company is the . . . limited liability aspect . . . ."); 952:4-11 ("Q. All right. And so just because the original seed money came out of your personal account, you didn't in any way accept or expose yourself to personal liability, did you? [Lyons]. No. That's . . . the point of the LLC. Q. And so . . . there's nothing wrong with that. You're trying to insulate yourself from being personally sued for

something? [Lyons]. Exactly why I keep questioning how I can be here.").) However, drawing inferences in Defendants' favor, the record does not conclusively establish that Lyons' undercapitalized Berkley or set up a limited liability company with the intent to render Berkley incapable of paying its obligations to DRE.

Regardless, under Missouri caselaw, the undercapitalization alone is sufficient and tends to show a "reckless disregard for the rights of others." *Sisson*, 2022 WL 497347, at *9 (citing *66, Inc.*, 998 S.W.2d at 41). Cases in which the court pierces the corporate veil where both undercapitalization and further wrongdoing are present do not foreclose the possibility of piercing the corporate veil where undercapitalization alone is present. *See Collet*, 708 S.W.2d at 286 ("Examples of such wrongs as would satisfy this standard include actual torts, violations of statutory duties, *undercapitalization, or* the stripping of assets from the subservient corporation." (emphasis added)).

Nor is this case like *Radaszewski*, where the court rejected the plaintiff's argument that the second element to pierce the corporate veil was established by undercapitalization alone. 981 F.2d at 311. Importantly, *Radaszewski* did not reject the principle that "Missouri courts will disregard the existence of a corporate entity that is operated while undercapitalized." *Id.* at 308. Instead, the court found that the defendant *was properly capitalized* because it held an insurance policy that satisfied applicable federal regulations in the industry. *Id.* at 310. No such insurance policy exists in this case, nor have Defendants provided any other evidence or argument that Berkley was somehow properly capitalized at any point of its existence. Defendants' reliance on *Garrett* is similarly misplaced, as that case applies *Radaszewski* and concludes that the subservient corporations were properly capitalized. *See Garrett v. Albright*, No. 4:06-cv-04137-NKL, 2007 U.S. Dist. LEXIS 58298, at *11 (W.D. Mo. Aug. 9, 2007), *vacated on other grounds*, 2008 WL 268993, at *1 (W.D. Mo. Jan. 30, 2008) ("All of [defendant's] subsidiaries are sufficiently capitalized under federal motor carrier regulations and the Court will not consider Plaintiffs [sic] continued assertions that [defendant's] subsidiaries are undercapitalized.").

The Court thus finds that DRE has established the second element for piercing the corporate veil because Lyons undercapitalized Berkley to the extent that it could not fulfill its obligations, which is sufficient "evidence tending to show an improper purpose or reckless disregard for the rights of others[.]" *Sisson*, 2022 WL 497347, at *9 (citing *66, Inc.*, 998 S.W.2d at 41). Thus, the Court need not reach DRE's additional argument regarding the $1.9 billion proof

of funds. However, the Court is skeptical that the $1.9 billion proof of funds would support the second element, considering the Rule 50(b) standard. The stipulated facts assert that Max Dobi sent the $1.9 billion proof of funds to DRE, not Lyons. (Doc. 227 at ¶ 24.) At trial, Lyons denied knowledge of this incident. (Doc. 320 at 898:9-900:10.) Thus, drawing inferences in favor of Defendants, the proof of funds was not sent or directed to be sent by Lyons and therefore does not provide a basis to conclude that Lyons used Berkley to commit a fraud or wrong.

## III. Causation

Finally, "[t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Radaszewski*, 981 F.2d at 306 (quoting *Collet*, 708 S.W.2d at 284). DRE points to the Court's December 6, 2024 Summary Judgment Order as establishing at least $14,400,000 of damages suffered by DRE because of Berkley's breaches of contract. Additionally, the Court's ruling on DRE's Omnibus Post-Trial Motion recognizes that DRE established unrebutted benefit-of-the-bargain damages related to Berkley's breaches of contract. (Doc. 345.) Defendants argue that even if Berkley's breaches of contract caused significant financial harm to DRE, such breaches are attributable to Berkley and not Lyons. (Doc. 334 at 4.)

Under Missouri law, "when the action of the dominant corporate [sic] renders the subservient corporation insolvent, then the requisite injury and causal connection is established." *Collet*, 708 S.W.2d at 287 (finding causation where dominant corporation maintained subservient corporation in insolvent condition, and the subservient corporation's insolvency rendered it unable to meet its obligations to creditors). Here, as in *Collet*, Lyons—the dominant entity—operated Berkley without any assets, rendering it insolvent and unable to meet its obligations as they came due. Therefore, the injury that DRE suffered when Berkley did not fulfill its obligations was proximately caused by Lyons' control and conduct. *Id.*; *see also Sansone v. Moseley*, 912 S.W.2d 666, 669-70 (Mo. Ct. App. 1995) (finding causation where subservient corporation was insolvent, and thus unable to meet its obligations, due to undercapitalization and asset stripping by its owner); *Real Estate Investors Four, Inc. v. Am. Design Grp.*, 46 S.W.3d 51, 58-59 (Mo. Ct. App. 2001) (finding causation where subservient corporation was insolvent, and thus unable to meet its obligations, due to undercapitalization by dominant corporation).

Thus, the Court concludes that DRE has established the three elements necessary to pierce Berkley's corporate veil and hold Lyons personally liable for any judgments entered against Berkley in this case.

10

**Conclusion**

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that DRE Health Corporation's motion to pierce Berkley Equity Limited's corporate veil, (Doc. 306), is **GRANTED**, and Defendant Anthony Lyons shall be held personally liable for any judgment entered against Berkley in this case.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 20, 2026

11