DRE HEALTH CORPORATION, )
　 )
　　　　Plaintiff, )
　 )
　　　v. ) Case No. 4:22-cv-00031-RK
　 )
BERKLEY EQUITY LIMITED and )
ANTHONY LYONS, )
　 )
　　　　Defendants. )

## ORDER

Before the Court are Plaintiff DRE Health Corporation's (1) "emergency motion for a temporary restraining order, preliminary injunction, pre-judgment attachments, emergency appointment of a receiver, and other equitable relief," (Doc. 349), and (2) DRE's "motion for certification of final judgment, prejudgment interest, and other post-judgment relief," (Doc. 351). These motions are fully briefed, (Docs. 350, 352, 361, 368, 369, 385), and the Court held a joint temporary restraining order and preliminary injunction hearing on April 24, 2026, (Doc. 379). After careful consideration and for the reasons explained below, DRE's emergency motion for TRO, preliminary injunction, and other relief is **DENIED**, and DRE's motion for certification of final judgment is **GRANTED in part** and **DENIED in part**. It is granted as to an award of prejudgment interest in the amount of 9%, for a total of $66,692,480.45, and denied as to the other relief requested.[1]

### Background and Procedural Posture

This case has an extensive factual and procedural history that the Court does not fully recount herein. The case arises from a business dispute between Plaintiff DRE Health Corporation ("DRE"), a producer and seller of medical and healthcare-related products including personal protective equipment, and Berkley Equity Limited ("Berkley") and Berkley's owner-operator

---

[1] The Court previously granted in part and held in abeyance in part DRE's motion for entry of final judgment. This Order incorporates the Court's prior order which certified as a final judgment (1) the Court's March 20, 2026 Order awarding DRE $165,428,171 on its breach of contracts claims in Counts 2 and 5, and (2) the Court's March 20, 2026 Order piercing Berkley Equity Limited's corporate veil and holding Defendant Anthony Lyons personally liable for the judgments entered against Defendant Berkley. (Doc. 374.)

Anthony Lyons, who sought to purchase millions of face masks from DRE in the midst of the COVID-19 pandemic.

DRE filed suit against Berkley and Mr. Lyons on January 18, 2022, asserting nine counts including breach of contract and misrepresentation-based claims such as fraudulent inducement. At the summary judgment phase, the Court found Defendant Berkley liable for breach of contract (Count 2 and Count 5) and awarded DRE $14,400,000.00 in damages. The case proceeded to a ten-day jury trial to determine any additional damages on the contract claims and liability on the misrepresentation-based claims. The jury returned a verdict in favor of Defendants on all claims.

Thereafter, DRE filed an array of post-trial motions including an omnibus post-judgment motion pursuant to Rules 50, 58, 59, and 60 of the Federal Rules of Civil Procedure and a motion to pierce the corporate veil of Berkley and hold Mr. Lyons liable for any judgments against it. On March 20, 2026, the Court granted in part DRE's omnibus post-judgment motion. (*See generally* Doc. 345.) Specifically, in relevant part, the Court granted DRE's Rule 50(b) renewed motion for judgment as a matter of law on Count 2 and Count 5 and awarding DRE benefit-of-the-bargain damages in the amount of $165,428,171. The Court also granted DRE's motion to pierce Berkley's corporate veil to hold Mr. Lyons personally liable for the judgment against Berkley. (Doc. 346.)

Then, just over two weeks later, on April 7, 2026, DRE filed the instant motions. DRE's motion for TRO and preliminary injunction is premised on the allegation that Mr. Lyons is attempting to dissipate assets and render himself judgment-proof. DRE's leading support for this contention is that a Bahamian mansion, "Jungle Cove," was listed for sale through Christie's International Real Estate for $59,500,000 just five days after this Court issued its orders on DRE's post-judgment motions. DRE also relies on prior sales or attempted sales by Mr. Lyons of other real estate during this litigation and Mr. Lyons' behavior during this litigation in support of the relief DRE requests.

Prior to the hearing on DRE's emergency motion, the Court issued an order under Rule 54(b) certifying as a final judgment its March 20, 2026 Orders awarding DRE $165,428,171 on its breach of contract claims in Counts 2 and 5 and piercing Berkley Equity Limited's corporate veil. (Doc. 374.)[2] At the hearing, plaintiff counsel explained that in light of this change in status—that

_____

[2] Defendants agreed that Rule 54(b) certification as final of the order "awarding DRE damages on its claim for breach of contract and of the Veil-Piercing Order . . . is both proper given their final nature and justified under the circumstances." (Doc. 374 at 7.) The Court also notes that on April 17, 2026, Defendants filed a Notice of Appeal in this case, including as to the Court's March 20, 2026 Orders. (Doc. 363.)

DRE was now a judgment creditor in a post-judgment context—DRE seeks only the appointment of a receiver over Mr. Lyons' assets and a limited TRO restraining Mr. Lyons from transferring assets or making transactions of a certain value until the receiver can be appointed. DRE reiterated this position in its reply brief in support of its motion for certification of final judgment filed after the TRO/preliminary injunction hearing, making clear that at this time it seeks only the appointment of a receiver, a short TRO during the time it takes to appoint the receiver, and prejudgment interest on the breach of contract damages award. (Doc. 385 at 2.)[3]

Further facts are set forth below as necessary.

## Discussion

### I. TRO and Preliminary Injunction

DRE seeks a brief temporary restraining order or preliminary injunction against Mr. Lyons prohibiting him from buying, selling, transferring, etc., any property or assets over a certain value without Court approval until a receiver is appointed. As explained below, the Court is not persuaded that a receiver is warranted at this time, and thus DRE's request for a limited injunction pending the appointment of a receiver is not warranted. However, even leaving aside the Court's determination that a receiver is not warranted, DRE has not established that it is entitled to the injunctive relief that it requests.

The factors the Court considers in determining whether to issue a temporary restraining order or preliminary injunction are the same: "(1) the threat of irreparable harm to the plaintiff, (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties, (3) the probability the plaintiff will succeed on the merits, and (4) the public interest." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "In balancing the equities no single factor is determinative." *Id.* at 113. However, "the absence of irreparable harm 'is an independently sufficient ground upon which to deny a preliminary injunction.'" *Morehouse Enters., LLC v. BATFE*, 78 F.4th 1011, 1017 (8th Cir. 2023) (quoting *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016)).

DRE argues that it faces a threat of irreparable harm because Mr. Lyons is attempting to dissipate assets and render himself judgment-proof, and if successful that DRE would be unable to recover on the $165,428,171 breach of contract judgment it now has against Berkley. DRE

---

[3] Accordingly, the Court does not consider DRE's prior requests for attachment, bond, or other relief.

largely relies on the listing of Jungle Cove for sale five days after the Court entered its Order on DRE's post-judgment motions to support its position; DRE also refers to the sale of Mr. Lyons' Colorado residence and attempted sale of his Miami residence during the pendency of this litigation as further support. Defendants respond that Mr. Lyons sold Jungle Cove in June 2021 and no longer has any interest in the property; therefore, the listing of Jungle Cove for sale does not indicate that Mr. Lyons is dissipating assets. Defendants further argue that Mr. Lyons' other sales have not been because of this litigation.

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). DRE's argument for irreparable harm is that it will be unable to recover the judgment against Berkley and Mr. Lyons if Mr. Lyons dissipates his assets, including the sale of Jungle Cove. However, the record before the Court indicates—and the Court finds— that Mr. Lyons sold Jungle Cove in June 2021. DRE has not provided any evidence beyond mere speculation that Mr. Lyons did not in fact sell the property, that the sale was not an arms-length transaction, or that he retained (and currently retains) any sort of interest in the property or would have any interest in the proceeds of the sale of the property. The March 25, 2026 listing of Jungle Cove makes no reference to Mr. Lyons. (*See* Doc. 350-3.) DRE's only documentary support that Mr. Lyons owned or had some interest in Jungle Cove after June 2021 is a wire transfer form—or "Transaction Detail Report"—concerning an August 23, 2021 wire transfer which lists Mr. Lyons' address as the Jungle Cove residence. (Pl. Hearing Ex. 7 (*see* below).)

4



| Transaction Information: | | | |
|---|---|---|---|
| Type: | MONEY TRANSFER | Account Name: | SUNNYSIDE TITLE AGENCY ESCROW |
| Description: | Wire transfer deposit | Account Number: | |
| Date: | 23-Aug-2021 | Bank Reference: | |
| Debit or Credit: | CR | Customer Reference: | |
| Amount: | 3,000,000.00 | Currency: | USD |
| | | Fed Reference ID (IMAD): | |
| | | Fed Reference ID (OMAD): | |
| | | Bank Reference ID: | |

| Payment Date & Amount Details: | | | |
|---|---|---|---|
| Payment Amount: | 3,000,000.00 | Payment Currency: | USD |
| Payment Date: | 08/23/2021 | | |

| Beneficiary Details: | | | |
|---|---|---|---|
| Beneficiary Name: | SUNNYSIDE TITLE AGENCY LLC ESCROW A | Beneficiary Bank Name: | |
| Account Number: | | Bank ID: | |
| Address 1: | 1 KINDERKAMACK RD | Bank Address 1: | |
| Address 2: | HACKENSACK,NJ,07601 5028 | Bank Address 2: | |

| Originator Details: | | | |
|---|---|---|---|
| Originator Name: | MR ANTHONY LYONS | Originator Bank Name: | Bk Julius Baer and Co |
| Originator ID: | | Bank ID: | |
| Account: | | Bank Address 1: | Lefebvre Court, Lefebvre Street |
| Address 1: | JUNGLE COVE CLUB DRIVE OLD FORT BA | Bank Address 2: | St. Peter Port |
| Address 2: | NASSAU, BAHAMAS | Bank Address 3: | |

| Instructing Bank Details: | | | |
|---|---|---|---|
| Instructing Bank Name: | CITIBANK NA | Bank Address 1: | |
| Bank ID: | | Bank Address 2: | |

| Sending Bank Details: | | | |
|---|---|---|---|
| Sending Bank Name: | CITIBANK NA | Sending Bank ID: | |

| Receiving Bank Details: | | | |
|---|---|---|---|
| Receiving Bank Name: | CAPITAL ONE NA | Receiving Bank ID: | |

| Payment Details: | | | |
|---|---|---|---|
| Details 1: | DRE HEALTH | | |

Mr. Lyons explained in his testimony that this was an error or oversight by him or a bank involved in the wire transfer due to the recency of his sale of the property two months earlier.

Defendants provided certified records from the Bahamian Registrar General reflecting the 2021 transaction, including the Indenture of Conveyance, (Doc. 361-2); correspondence from Stephen J. Melvin, Esq., of the Bahamian firm of Higgs & Johnson—the buyer's authorized representative in the 2021 sale—stating that the buyer's purchase of Jungle Cove was an arms-length transaction, (Doc. 361-3); and other documents reflecting the June 2021 sale of Jungle Cove, (Docs. 361-4 through 361-7). While DRE argues that Mr. Lyons' claim that he sold Jungle Cove in 2021 is "dubious," and that the evidence presented by the defense supporting an arms-length transaction in "unreliable, unverifiable, and inadmissible," DRE has not provided *any support* for its contention that Mr. Lyons did *not* sell Jungle Cove, that the sale was *not* an arms-length transaction, or that Mr. Lyons retained or retains some interest in Jungle Cove and/or in the proceeds from the sale of Jungle Cove under the current listing. Ultimately, "[a] plaintiff seeking a preliminary injunction bears the burden of showing that such extraordinary relief is warranted."

*H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023).  DRE did not meet its burden here.  It cannot rely on mere speculation that the alleged 2021 sale of Jungle Cove is "dubious."[4]

DRE also suggests that two other real-estate transactions show that Mr. Lyons has sold assets at critical junctures of this litigation.  As to Mr. Lyons' Colorado residence, which he sold in November 2024 for $19 million, DRE argues that he sold it after the briefing on summary judgment was submitted.  While this may be true, Mr. Lyons, however, listed this property for sale in January 2024, months before Plaintiffs' summary judgment motion was filed.  Finally, as to Mr. Lyons' Miami residence, which DRE argues he listed for sale in response to the briefing on DRE's post-judgment motions, that residence was listed for sale by Mr. Lyons years prior to this stage of the litigation.  The timing of the listing of these properties for sale does not indicate to the Court any intentional dissipation of assets.  Moreover, the length of time it took to sell the Colorado residence (nine months), and the length of time the Miami residence has been on the market without being sold (years), indicates that even if Mr. Lyons had an interest in Jungle Cove (which the record indicates he does not), any such sale of Jungle Cove would likely take months if not years.  Thus any potential harm to DRE resulting from the sale of Jungle Cove is not imminent.

Based on the factual record before the Court, the Court concludes that DRE has not shown a sufficient threat of irreparable harm because it does not appear that Mr. Lyons is attempting to dissipate assets.[5]

---

[4] After the preliminary injunction hearing, Defendants filed a Notice of Supplemental Evidence with 20 additional exhibits attached.  (Doc. 382; Docs. 382-1 through 382-20.)  The Court finds that these exhibits further support Defendants' contention that Mr. Lyons sold Jungle Cove in June 2021 in an arms-length transaction and that he no longer has an interest in the property or the proceeds of any sale of the property.

[5] As a legal matter, the Court is also doubtful that the inability to recover a monetary judgment on DRE's breach of contract claims is sufficient to establish irreparable injury, even if DRE had established that Mr. Lyons is attempting to dissipate assets.  DRE argues that "[t]he threat of unrecoverable economic loss . . . qualif[ies] as irreparable harm." *Iowa Utils. Bd.*, 109 F.3d at 426.  While this is true as a general proposition in certain situations, the Supreme Court has held that courts may not issue an injunction to freeze assets in a case seeking only money damages. *See Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999) ("[W]e hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages."); *see also Pineywoods Title, LLC v. Best Deal Motors*, LLC, No. 4:23-cv-877-SEP, 2024 WL 4625904, at *2-3 (E.D. Mo. Oct. 30, 2024) (applying *Grupo* and also finding no showing of irreparable harm in contract case seeking money damages); *Nelson v. S. Poverty L. Ctr.*, No. 4:18-ccv-895-RK, 2019 U.S. Dist. LEXIS 238150 (W.D. Mo. 2019) (denying preliminary injunction for freeze of assets in case where plaintiff was seeking contract damages).  While these cases occurred in a prejudgment posture, the courts' reasoning is persuasive in this post-judgment context as well.

## II. Receiver

In both motions currently before the Court, DRE requests that the Court appoint a receiver to "identify, marshal, and preserve" Mr. Lyons' assets. At this juncture, the Court considers DRE's request for a receiver in the post-judgment context due to the Court's certification of the contract damages award and veil-piercing orders as final judgments.

"A receiver is an extraordinary equitable remedy that is only justified in extreme situations." *Aviation Supply Corp. v. R.S.B.I Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). The Court considers the following factors to determine whether the appointment of a receiver is warranted: "[1] a valid claim by the party seeking the appointment; [2] the probability that fraudulent conduct has occurred or will occur to frustrate that claim; [3] imminent danger that property will be concealed, lost, or diminished in value; [4] inadequacy of legal remedies; [5] lack of a less drastic equitable remedy; and [6] likelihood that appointing the receiver will do more good than harm." *Id.* at 316-17.

Here, DRE bases its request for a receiver, in part, on the same factual premise as its request for a TRO and preliminary injunction—Mr. Lyons' alleged attempted sale of Jungle Cove and other real estate to avoid judgment. As discussed above, the Court finds that the current factual record does not support DRE's allegation of asset dissipation to avoid judgment. Therefore, the Court will not appoint a receiver on this basis at this time. DRE also relies on Mr. Lyons' conduct during the course of this litigation as support for appointing a receiver. For example, DRE argues that Mr. Lyons submitted a sham affidavit at the summary judgment phase, that the Court found that Mr. Lyons used a zero-asset shell company to avoid contract obligations and liabilities, and that Mr. Lyons' trial and hearing testimony shows that he refuses to disclose information about his assets and net worth or is unaware of what is being done with his assets.

The Court does not condone much of Mr. Lyons' conduct displayed during the course of this litigation. However, the Court is not persuaded that Mr. Lyons' previous conduct in this litigation alone justifies the extraordinary relief of the appointment of a receiver in this early post-judgment posture. The caselaw DRE cites in support of the appointment of a receiver demonstrates stronger cases of fraudulent and evasive conduct, specifically in the context of post-judgment collection. In *Jet Midwest International Co. v. Jet Midwest Group*, No. 5:18-cv-06019-FJG, 2020 WL 4819416 (W.D. Mo. May 26, 2020), for example, the district court found that Jet Midwest Group engaged in fraudulent conduct specifically to frustrate the enforcement of the judgment

including creating a fraudulent lien on the company to avoid paying a judgment. *Id.* at *88. Similarly, in *Aviation Supply Corp.*, Defendant Barber—also Defendant R.S.B.I.'s owner and president—granted a superior security interest in all his assets to a family business after the entry of judgment, which the district court concluded bore "two well-defined badges of fraud: transfer pending the writ of execution and transfer to a relative." 999 F.2d at 317.

Here, Mr. Lyons' conduct on which DRE relies in support of the appointment of a receiver occurred at earlier stages of this litigation and prior to the finalization of judgment in this case. For example, while the Court found that Mr. Lyons submitted a sham affidavit at the summary judgment stage, the purpose of the sham affidavit was to avoid summary judgment. Similarly, while Mr. Lyons' trial and hearing testimony was somewhat evasive, particularly as to questions related to his assets and net worth, that testimony occurred in more limited contexts—i.e., trial (where the relevancy was dependent on the jury finding punitive damages were warranted), or at the TRO/preliminary injunction hearing (which was focused on the narrow issue of alleged dissipation of assets). Given this history, the Court (and Plaintiff DRE) will undoubtedly be attune to any similar tactics employed to avoid, delay, or give knowingly incomplete or evasive answers to post-judgment discovery that is otherwise available to DRE, including under Rule 69 of the Federal Rules of Civil Procedure. DRE has not yet sought such discovery, however. *Cf. Aviation Supply Corp.*, 999 F.2d at 317 (finding that "normal remedies as a judgment creditor" were insufficient and a receiver was warranted where plaintiff "pressed for [Rule 69] discovery [and] Barber provided an inaccurate financial statement"). On the current record, without something more, the Court does not find that DRE has sufficiently shown that fraudulent conduct has or is about to occur in the post-judgment collection context or that there is an imminent danger that property will be lost or concealed.

DRE has also failed to show the inadequacy of other collection tools available to it, and thus the remaining factors also counsel against appointing a receiver. Under Rule 69(a) of the Federal Rules of Civil Procedure, "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Additionally, "the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(b).

At this juncture, DRE only recently began attempting to collect its judgment from Berkley and Mr. Lyons, and there is currently no evidence that such collection efforts and methods are insufficient. Therefore, the Court finds that DRE has not shown that the drastic remedy of the appointment of a receiver is presently warranted.[6]

## III. Prejudgment Interest

Finally, the Court addresses the issue of prejudgment interest.  The Court's Order certifying as final judgments the breach of contract award and its corporate veil order reserved a determination of prejudgment interest until such time as the matter was fully briefed.  DRE has now submitted its reply in support of its motion for certification of final judgment.  (Doc. 385.)  The parties do not dispute that prejudgment interest on the judgment is warranted.  However, the parties disagree as to the proper rate of prejudgment interest.

Ultimately, the proper prejudgment interest rate is an issue of contract interpretation in this case.  The parties entered a "Sale & Purchase Contract" ("SPA") on September 2, 2021.  (Tr. Ex. 1.)[7]  The SPA states that "[t]his Agreement and the executed DRE Health New Customer Application and the Incorporated Terms and Conditions of DRE at www.drehealth.com/terms-conditions-of-sale represents the entire understanding and constitutes the entire agreement between the parties . . . ."  (Tr. Ex. 1 at § 11(a).)  Further, "[i]n the event of any conflict between the terms of this Agreement and the terms of any Invoice or Purchase Order, the terms of the Invoice or Purchase Order shall govern."  (*Id.* at § 11(o).)  The SPA itself is silent as to any agreed-upon prejudgment interest rate.

However, DRE's New Customer Application and Terms and Conditions both mention a prejudgment interest rate.  The New Customer Application states that "[t]he Applicant agrees to pay interest on past due accounts at the highest rate permitted by law."  (Tr. Ex. 37.)  The Terms and Conditions state

> [i]n the event that the Customer has not paid at the time or within the period of time referred to in paragraph 1 of this article, he shall be in default by operation of law and without any prior notice of default being required, and *he shall owe the statutory interest* on the amount due and payable from the date at which the payment should ultimately have been made, without prejudice to any other rights

---

[6] Should other methods of collection prove unsuccessful or if Defendants engage in future fraudulent, misleading, obstructive, or other intentional conduct in attempt to evade execution of the judgment, DRE may file additional motions for relief as it deems necessary.

[7] "Tr. Ex." refers to Plaintiff DRE's trial exhibits in this case.

of the Company (explicitly including the right to compensation of loss on exchange).

(Tr. Ex. 2 at § 11.4 (emphasis added).) Accordingly, DRE's New Customer Application provides for interest "at the highest rate permitted by law," while the Terms and Conditions state the customer "shall owe the statutory interest." Finally, the Court notes that the Invoices in this case both incorporate the Terms and Conditions by reference as follows: "Additional terms as outlined in sales terms & conditions available at www.drehealth.com." (Tr. Exs. 3, 4.) The Invoices do not reference the New Customer Application.

DRE argues that it is entitled to the "highest interest permitted by law," pursuant to the New Customer Application, which DRE argues is 10% under § 408.030, RSMo.[8] Defendants argue that DRE is only entitled to "the statutory interest," pursuant to the Terms and Conditions, which refers to the 9% rate set forth in § 408.020, RSMo.[9] Defendants further argue that the provisions in the New Customer Application and Terms and Conditions are in conflict. DRE argues that the terms are not in conflict because the Terms and Conditions includes the statement "without prejudice to any other rights of the Company [DRE]" after setting forth that the customer will owe "the statutory interest" on any amounts due. In other words, DRE argues that the provision in the Terms and Conditions relating to statutory interest would only apply if it did not interfere with another right of DRE—here, the right to recover interest at the highest rate permitted by law under the New Customer Application.

The Court is not persuaded by DRE's attempt to reconcile these provisions. Both provisions purport to set forth DRE's right to recover a certain amount of interest. The provisions are in conflict to the extent the New Customer Application permits recovery of interest at the highest rate while the Terms and Conditions permit recovery of the statutory rate. And the phrase at the end of the Terms and Conditions interest provision that the foregoing paragraph applies

---

[8] This statute provides that "[p]arties may agree, in writing, to a rate of interest not exceeding ten percent per annum on money due or to become due upon any contract, including a contract for commitment; except that, when the 'market rate' exceeds ten percent per annum, parties may agree, in writing, to a rate of interest not exceeding the 'market rate'." Mo. Rev. Stat. § 408.030(1).

[9] This statute provides that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." *Id.*

DRE does not contest that the statutory rate referred to in the Terms in Conditions is 9% per annum as set forth in § 408.020, RSMo. Instead, DRE states that this is not the "highest interest permitted by law," which it argues it is entitled to under the New Customer Agreement. (*See* Doc. 385 at 4, n.3.)

"without prejudice to any other rights" of DRE does not resolve this conflict which regards conflicting terms governing *the same right*—DRE's right to collect interest.

Having found that the provisions conflict, the Court now considers which applies. While the SPA is silent as to prejudgment interest, it expressly incorporates both the New Customer Application and the Terms and Conditions. It also states that if there is any conflict between the SPA (including the New Customer Application and Terms and Conditions, by incorporation) and any invoices, that the terms of the invoices control. And here, the parties' agreement includes two invoices which incorporate by reference the Terms and Conditions and do not incorporate the New Customer Application. Because the invoices control if in conflict with the SPA, and the invoices incorporate only the Terms and Conditions, the Court finds that the Terms and Conditions are controlling on the issue of prejudgment interest. Therefore, DRE is entitled to prejudgment "statutory interest" at the rate of 9% per annum pursuant to § 408.020, RSMo.

As to the timeframe for calculating prejudgment interest, DRE contends that prejudgment interest should accrue from October 31, 2021,[10] to April 23, 2026.[11] Defendants did not contest this timeframe in their suggestions in opposition, and the Court adopts this as the proper timeframe for the calculation of prejudgment interest.

Thus, the Court awards prejudgment interest at the rate of 9% per annum from October 30, 2021, to April 23, 2026, for a total of $66,692,480.45.[12]

---

[10] DRE asserts that "the date Berkley breached the SPA was October 31, 2021." (Doc. 352 at 16.) The Court has previously stated that "Defendant Berkley was first to breach under the SPA by failing to pay the smaller invoice upon the masks clearing customs. The Court further found that Defendant Berkley was first to breach under the Addendum by failing to pick up the larger invoice masks as they became available." (Doc. 345 at 5.) However, the Court did not note a precise date of these breaches. Nevertheless, DRE's assertion that October 31, 2021, is the proper starting date for calculating pre-judgment interest was not countered by Defendants and the Court thus uses that date to determine prejudgment interest.

[11] This is the date on which the Court certified its award of breach of contract damages as a final judgment. (Doc. 374.) While Defendants treated this judgment as final prior to the Court's certification, as evidenced by the notice of appeal filed in the case prior to certification, Defendants did not contest DRE's timeframe for the calculation of prejudgment interest.

[12] Formula: ($165,428.171 [principal amount of judgment] x .09 [interest rate] = 14,888,535.93 [yearly rate] / 365 = 45,322.79 [daily rate]) x 1635 [days from date of obligation to date of judgment] = $66,692,480.45. (*See* Doc. 385 at 5.)

11

**Conclusion**

Accordingly, DRE's emergency motion for a temporary restraining order, preliminary injunction, prejudgment attachments, emergency appointment of a receiver, and other equitable relief, (Doc. 349), is **DENIED**. DRE's motion for certification of final judgment, prejudgment interest, and other post-judgment relief, (Doc. 351), is **GRANTED in part** as to an award of prejudgment interest in the amount of 9%, for a total of $66,692,480.45, and **DENIED in part** as to the other relief requested therein.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 11, 2026